816 F.2d 680
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dewey W. JONES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-3120.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1987.
 
 Before LIVELY, Chief Judge, and WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Dewey W. Jones appeals from the decision of the district court affirming the Secretary's denial of disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Appellant filed an application for disability insurance benefits and supplemental security income on September 11, 1981. Appellant alleged a disability onset date of June 1980. The alleged impairment was arthritis. His claim was denied and he requested an administrative hearing. On March 30, 1983, the Administrative Law Judge (ALJ) also denied benefits. The Appeals Council refused to hear the case so appellant filed a civil action in the United States District Court for the Southern District of Ohio. On April 5, 1984, the court ordered the case remanded to the Secretary to obtain additional information from appellant's treating physician concerning the course of treatment for his arthritis. A second hearing was held and on June 21, 1985, the ALJ again found the appellant not disabled.
 
 
 3
 On August 27, 1985, the Appeals Council adopted the ALJ's decision as the final decision of the Secretary of Health and Human Services. This decision was appealed to the district court where the decision of the Secretary was affirmed. Claimant filed this timely appeal.
 
 
 4
 Appellant was born on April 9, 1948, making him 37 years of age on the date of the first hearing. Appellant's past relevant work consists of working for 14 years as an assembler of refrigerators at White Westinghouse-Columbus Products. The job required him to assemble major appliances including refrigerators, air conditioners, washers and dryers. His former work required him to walk seven hours per day, stand eight hours per day, bend and reach frequently and lift up to 70 pounds.
 
 
 5
 Appellant was laid off work in June of 1980. Appellant testified at the second hearing that he had a history of missing a lot of work and has been unable to work since June of 1980 because of rheumatoid arthritis, gouty arthritis, pain, hypertension and colitis. He stated that he has swelling in his hands, knees, ankles, right shoulder and lower back. He testified that he is unable to make a tight fist and he experiences pain when bending or using his hands. He stated that both of his knees swell with fluid accumulation and often feel hot. Appellant stated that he first noticed these problems in 1970 when he was in the armed services. Appellant was hospitalized at that time but was told that he did not have arthritis. He began work after his release from the armed services, but he had problems performing his job because of these same symptoms and was hospitalized on several occasions.
 
 
 6
 Appellant testified that he was a heavy drinker of moonshine between the ages of 14 and 17. He continued to drink in the armed services and continues to drink at present, although he states that his consumption has been reduced.
 
 
 7
 Appellant takes several medications for arthritis and blood pressure, but he uses no ambulatory aids. He alleges that despite his treatment, his condition has worsened over the years. Appellant stated that his body "locks up" to the point where he cannot move, although this condition gradually subsides permitting him to move about normally.
 
 
 8
 When the ALJ asked appellant about his exertional limitations, appellant testified that he cannot lift or carry more than 10 pounds, walk more than 20 to 25 minutes at a time, and sit for more than 20 minutes at a time. Appellant testified that he cannot drive because, as a result of his pain, he cannot control the steering wheel or use the brakes Appellant lives in a two-story apartment but finds it difficult to climb stairs. He does not complete any household chores and does not attend church or spectator events. Appellant's major recreation is watching television.
 
 
 9
 Appellant has been seen by several physicians. He was hospitalized at Doctor's Hospital in Columbus, Ohio, from September 26 until October 12, 1978 for treatment of low back pain. He was diagnosed as having primary hypertension, a solitary kidney (a congenital abnormality), acute polyarthritis of a seronegative rheumatoid arthritic type, and toxic hepatitis secondary to hygroton.
 
 
 10
 Dr. Messick, a board-certified internist, treated appellant from December 2, 1980 until December 15, 1980. This physician stated that appellant showed tenderness over the peripheral joints, but provided no diagnosis.
 
 
 11
 Appellant was treated at the Cleveland Avenue Medical Center from January 3, 1977 until December 2, 1978 for hypertension, polyarthritis, gout and chronic low back pain. X-rays of appellant's left foot, lumbosacral spine, pelvis, left knee and right elbows were negative. Dr. Ratliff reported on November 20, 1981, that appellant showed swelling and tenderness in the knee joint. He diagnosed rheumatoid arthritis. Dr. Elder, an orthopedic surgeon,examined appellant on November 10, 1981. Dr. Elder determined that appellant had a full range of motion in all joints of both the upper and the lower extremities and showed no evidence of heat or redness. He also displayed synovial thickening in both knees but there was no interarticular fluid present. Dr. Elder opined that his findings were compatible with a diagnosis of an early rheumatoid arthritis.
 
 
 12
 On March 10, 1982, appellant was examined by Dr. Papp. Dr. Papp diagnosed polyarthralgias of an uncertain etiology with acute polyarthritis and seronegative rheumatoid arthritis by history.
 
 
 13
 Appellant was hospitalized at Riverside Methodist Hospital from August 22 until August 28, 1983. It was observed that appellant had a single kidney which was a congenital deformity. He showed a limited range of motion in the right shoulder. the right knee, and the right elbow. Dr. Baird, an immunologist, examined appellant and diagnosed hypertension and polyarticular gout related to moonshine ingestion.
 
 
 14
 On September 14, 1984, Dr. Hudson, an assistant professor of medicine at the Ohio State University College of Medicine, reported his findings, upon the request of appellant's counsel, after obtaining a history and conducting a physical examination of appellant. Dr. Hudson stated that appellant appeared to suffer from at least two forms of arthritis, neither of which appeared to be rheumatoid arthritis. Rather, he opined that it was clear that appellant suffered from gouty arthritis. Dr. Hudson felt that the gouty arthritis was probably responsible for many or all of appellant's peripheral joint symptoms such as the swelling and pain. Dr. Hudson also noted that appellant appeared to have chronic back pain with possible lower extremity or peripheral joint involvement of the type characteristic of arthritis seen in association with inflammatory bowel disease. Dr. Hudson stated that. "[g]iven his history of medical therapy and the inadequacy of his medical control over this problem, on this one day of evaluation, it would be hard to imagine how this gentleman could work productively."
 
 
 15
 Dr. Luzar, a rheumatology specialist and one of appellant's treating physicians, treated appellant from April 1982 to April 1983. He diagnosed that appellant suffered from gout and polyarthritis either secondary to sacrolitis or seronegative rheumatoid arthritis, and opined that his findings indicated "significant disability."
 
 
 16
 Appellant is currently receiving treatment through a VA outpatient clinic at Ohio State University Hospital and at the Medical Center in Dayton. Appellant was hospitalized at the Veteran's Administration Medical Center in Dayton, Ohio, from April 26 until May 17, 1982. Appellant complained of joint pain and swelling of the knees. He showed a negative rheumatoid arthritis factor and was diagnosed as having gouty arthritis, essential hypertension controlled with diet, and colitis of an unknown etiology. In November 1983, appellant showed no swelling or tenderness in the right knee; however in March 1984, he showed effusion in both knees. In August 1984, appellant had no active inflammation of any joint, but he showed thickened proximal interphalangeal joints. In September 1984, his fingers were fully flexible and he had full range of motion in the ankles without swelling. In October 1984, appellant showed no joint effusion and had a grossly normal range of motion in all extremities.
 
 
 17
 Dr. Hook, a specialist in internal medicine, testified on behalf of the Secretary. After examining all the medical evidence, Dr. Hook noted that appellant had hypertension without end organ damage and described this as a slight impairment. He also opined that appellant suffered from gouty arthritis and polyarthritis of an unknown etiology. He believed these impairments to be of a moderate nature. Dr. Hook did note there was recurrent joint effusion, particularly in the knees. The physician also noted abnormal kidney function, which he characterized as a slight impairment. Dr. Hook believed that appellant did not suffer from an impairment or combination of impairments which meets or equals any listing in the listing of impairments.
 
 
 18
 The ALJ determined that the medical evidence established that appellant suffered from severe gouty arthritis, polyarthritis characterized both as rheumatoid arthritis and arthritis associated with inflammatory bowel disease, essential hypertension controlled with medication and a mild intermittent abnormal kidney function. However, the ALJ opined that the appellant did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ believed that appellant's complaints of severe pain in multiple joints were not credible. The ALJ concluded that although appellant could not perform his past relevant work as a assembler he could perform sedentary work. Therefore, after considering appellant's residual functional capacity, age, education and work experience, pursuant to the medical-vocational guidelines, the ALJ concluded that appellant was not disabled.
 
 II.
 
 19
 The only issue involved on appeal is whether there is substantial evidence to support the Secretary's decision to deny the claimant disability benefits. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." It is more than a scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). The scope of judicial review is limited to determining whether the findings of fact made by the Secretary are supported by substantial evidence, and deciding whether the Secretary employed the proper legal criteria in reaching those findings. Gibson v. Secretary of Health, Education & Welfare, 678 F.2d 653 (6th Cir. 1982). Thus, the court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.
 
 
 20
 Appellant argues that the ALJ relied too heavily on the testimony of Dr. Hook, a non-examining physician. Appellant asserts that the opinion of a non-examining physician cannot constitute substantial evidence to support a denial of benefits. In addition, appellant contends that there is no conflicting medical evidence in the record to justify the ALJ's reliance on the opinion of Dr. Hook; he asserts that Dr. Hook's testimony is the only conflicting evidence of record.
 
 
 21
 The appellant is correct in asserting that the opinions of treating physicians who have treated a patient over a period of time are given greater weight than the reports of physicians employed by the government for the purpose of defending against a disability claim. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, attributing more weight to the opinions of treating examining physicians only applies when the opinions are substantiated by medical data. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Furthermore, it should be noted that although Dr. Luzar and Dr. Hudson felt that appellant was disabled, the ultimate determination of disability is the prerogative of the Secretary, and the Secretary cannot be bound by the unsubstantiated conclusions of a physician. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).
 
 
 22
 The reason this case was remanded to the Secretary was because Dr. Luzar's findings were inadequate to support his conclusion that appellant was disabled. The ALJ made numerous attempts to get Dr. Luzar to give the ALJ a more complete report concerning appellant's illness. These attempts, however, were to no avail. The ALJ recognized the previously stated rule that treating physicians' opinions are generally given greater weight than other physicians, but refused to give Dr. Luzar's opinion the normal weight because of his lack of medical data. We believe there is not substantial medical data to support Dr. Luzar's opinion, justifying the ALJ's decision to accord his conclusion little weight.
 
 
 23
 We also believe appellant's argument that there is not conflicting medical evidence except for that of Dr. Hook's testimony is without merit. The record reflects that Dr. Elder and Dr. Luzar felt that appellant had rheumatoid arthritis but that Dr. Hudson and Dr. Baird had concluded that he did not. Dr. Elder even found that appellant had a full range of motion in all joints of both the upper and the lower extremities. The ALJ went meticulously through numerous medical reports from 1978 to 1985, and found that there were only 16 occurrences where effusion was noted to be present. Furthermore, although appellant describes episodes where his body "locks up" and he is totally unable to move, not one of these incidents has been documented and there are no laboratory findings which support such a reaction.
 
 
 24
 The ALJ found that appellant had a severe impairment and was unable to perform his past work as an assembler, but concluded that the appellant was able to perform sedentary work. There is conflicting medical evidence concerning his exertional limitations, but as the district court correctly stated, it is not the court's place to weigh the evidence. As long as there is substantial evidence to support the ALJ's decision it must be upheld. The lack of documented evidence concerning appellant's complaints of effusion, Dr. Hook's testimony, and the fact that the medical evidence shows that on more than one occasion the appellant had a full range of motion, provide substantial evidence for the ALJ's conclusion that appellant retains the residual functional capacity to perform sedentary work.
 
 
 25
 Having found that there is substantial evidence to support the Secretary's decision that appellant is capable of performing sedentary work, we accordingly AFFIRM the judgment of the district court.