816 F.2d 679
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Raymond D. COURTERIER, Jr., Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1654.
 United States Court of Appeals,
Sixth Circuit.
 April 15, 1987.
 
 Before KEITH, Circuit Judge and WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Raymond D. Courterier, Jr., appeals from the district court's judgment affirming the Secretary's determination of the date upon which Courterier became disabled for social security purposes. For the reasons that follow, we affirm.
 
 I.
 
 2
 Courterier filed an application for disability insurance benefits on February 23, 1982, claiming inability to work as of November 18, 1981, due to myocardial infarction. This claim was denied initially and on reconsideration. Courterier then requested an administrative hearing, which was held on October 25, 1982. On December 13, 1982, the ALJ found that Courterier was not disabled. The Appeals Council denied Courterier's request for review of the hearing decision on March 7, 1983.
 
 
 3
 Courterier then filed an action with the district court seeking review of the Secretary's decision. However, the case was remanded, at the Secretary's request, for further administrative proceedings. On December 2, 1983, the Appeals Council vacated its prior denial of Courterier's request for review and remanded the case to an ALJ. A hearing was then held on December 4, 1984, at which Courterier was represented by counsel.
 
 
 4
 Courterier testified as to his personal history, his work history and his ailments. Courterier was born on April 12, 1934, and has an eighth grade education. He last worked as a self-employed locksmith and lighting maintenance man for 13-16 years prior to the date of his alleged disability.
 
 
 5
 Courterier testified to the following at the hearing His prior employment required lifting of ladders and balancing transformers that would go into lights. At times he would have to carry boxes of transformers weighing 80 to 100 pounds from parking lots to stores located in malls. He stated that heart disease prevented him from working at the present time. Due to the heart disease he has experienced severe arrhythmia problems and frequent angina. He further stated that he is unable to engage in any real physical exertion without experiencing extreme chest pains. Stress also plays a factor. His chest pains occur a couple of times a day and usually subside in a couple of minutes with medication. Noticeable arrythmia occurs four times a week. At times the pain radiates down to his fingers. He uses a four pedestal cane and cannot walk more than 50 feet without experiencing pain. If extensive walking is necessary he uses a wheelchair. Exertion such as standing more than 15 minutes or continual talking causes him to become lightheaded and dizzy. He avoids going out in cold weather because it bothers him. He also stated that he was unable to sit for more than two hours without bothering his back. Although he is apprehensive about driving, he occasionally drives short distances of up to five miles. He attends church services two or three times a month and is able to do light dusting and light laudry work. He attends heart club meetings at a hospital once a month. In the afternoons he reads, watches television and rests from two to four hours.
 
 
 6
 Courterier testified that he had very poor gripping power in his hands and that his fingers had become nubbed at the tips. This condition causes him problems when using small items and tools. He further testified that he could not do a benchwork job which required him to repeatedly sit and lift 5 to 10 pounds and walk with minimal weights. Such a job would cause him to experience angina and dizziness and his fingers would be unable to manipulate the objects. He also stated that he would have to have a place to lie down when he experienced the angina.
 
 
 7
 Dr. Benjamin M. Lewis testified as a medical advisor Dr. Lewis diagnosed Courterier's condition as coronary or aschemic heart disease. This diagnosis was based upon a cardiac catheterization dated February 18, 1982. However, he opined that this condition did not meet or equal a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 for any 12 consecutive month period. Dr. Lewis noted that the record contained no objective medical evidence covering the time period from May, 1982, when Courterier underwent a stress test, to January, lq.84, when Courterier underwent a 24 hour Holter monitor In January, 1984, Dr. Lewis stated that the evidence established that Courterier had developed ventricular arrythmia. Dr. Lewis described the severity of this condition as "sitting on a keg of dynamite so to speak that might go off at any time." He opined that the objective medical evidence established that Courterier was in this life-endangering situation until at least July, 1984. Medical tests after this date showed an improvement. Dr. Lewis stated that at the present time Courterier's.main problems appeared to be angina and marked tiredness and that limitations should be imposed on walking, but not on sitting and standing. He noted that Courterier had very marked clubbing of the fingers which would interfere with fine manipulation. Dr. Lewis also opined that, due to his condition, Courterier should avoid stressful situations, cold temperatures and working at heights or around dangerous machinery.
 
 
 8
 Ellen Tripi testified as a vocational expert. She stated that, based upon Courterier's testimony, he would not be able to do any substantial gainful activity, but if Courterier had the exertional capacity indicated by the medical advisor, he could perform sedentary work. However, Ms. Tripi went on to note that Courterier's limitation of fine manipulation would cause difficulty in transferring his skills to perform existing sedentary work
 
 
 9
 The following medical evidence is contained in the record. Courterier was admitted to Mount Clemens General Hospital on November 23, 1981, after sustaining an acute myocardial infarction while deer hunting. He was transferred to this hospital after first being stabilized at Dickenson County Memorial Hospital. At the time of admittance he was stable, oriented and had no chest pain. Courterier was submitted to a 24 hour Holter monitor which exhibited that he had a basic sinus rhythm, rare premature atrial contractions and no sustained tachy or brady arrhythmia. He was released on December 2, 1981, with a final diagnosis of acute myocardial infarction.
 
 
 10
 On December ,14, 1981, Dr. Leonard,a treating physician at Dickenson Memorial Hospital, reported that Courterier's cardiac condition would make Courterier unsuitable for work at that time. However, he also stated that further recommendations regarding Courterier's future employability would be left to the judgment of Dr. Westveld, Courterier's personal physician.
 
 
 11
 Courterier was admitted to Detroit Osteopathic Hospital on February 17, 1982, for cardiac catheterization. At this time he denied experiencing angina since his myocardial infarction. The final diagnosis was arteriosclerotic heart disease with total occlusion of the left anterior descending coronary artery with significant circumflex as well as diagonal coronary artery stenosis. The right coronary artery appeared grossly normal. The secondary diagnosis was hvperlipidemia and chronic obstructive pulmonary disease. He was discharged as improved on February 19, 1982.
 
 
 12
 On February 22, 1982, Dr. Westfeld reported that Courterier was scheduled for bypass surgery and that he advised Courterier that Courterier would be off work for a period of six months, with a tentative back to work date of August 23, 1982.
 
 
 13
 Courterier underwent bypass surgery on April 14, 1982 Prior to surgery Courterier reported that he had been on a mild exercise program and could walk one and a half miles without shortness of breath. He also reported that he did not have chest pain. Postoperatively there were no significant complications and Courterier was discharged on April 23, 1982. He was instructed to see the operating surgeon and Dr. Westveld in two weeks, to refrain from driving prior to seeing the surgeon and to avoid heavy lifting. The final diagnosis was coronary artery occlusive disease.
 
 
 14
 A treadmill exercise tolerance test administered on May 14, 1982, was negative for significant arrhythmias and for symptoms of chest pain. An abnormal baseline and inadequate increase in heart rate precluded a definitive ischemic evaluation. Courterier achieved a heart rate 72 percent of age predicted maximum and 5 METS. After evaluating this test, a Michigan state agency medical consultant reported that Courterier's physical residual functional capacity was for a full range of light work.
 
 
 15
 On May 17, 1982, Dr. Westveld reported that he advised Courterier to stay off work until November, 1982. On June 28, 1982, Dr. Westveld reported that Courterier was continuing to experience heavy, substernal chest pains three to five times per week and precipitated by exertion and emotion. On October 19, 1982, Dr. Westveld opined that Courterier was completely disabled at that time for any type of work due to the combination of his significant surgery and recurrent complaints of chest pain even with minimal to mild exertion or emotion.
 
 
 16
 The record does not contain any further medical evidence until January 23, 1984, when Courterier was submitted to a second 24 hour Holter monitor test. Lown class 4A and B ventricular ectopy, relating to episodes of chest pain, was reported. Multiple episodes of ventricular ectopy, not related to pain and occurring particularly during sleep, were also reported. Repeat Holter monitors of February 22, 1984, and March 1, 1984, also reported Lown Class 4A and B ventricular ectopy.
 
 
 17
 Courterier was admitted to Sinai Hospital Arrhythmia Clinic on April 16, 1984, for an evaluation and a comparative study between different drugs for treatment of his ventricular arrhythmias. His hospital course was uneventful except for persistent mild angina In comparison from his baseline Holter while off antiarrhythmics, he had an overall improvement. He was discharged on April 24, 1984. to be routinely followed as an outpatient in the arrhythmia clinic
 
 
 18
 On June 22, 1984, Dr. Westveld reported that Courterier was currently being maintained on an experimental agent for ventricular arrhythmias. Although Courterier continued to have short runs of ventricular tachycardia, Dr. Westveld noted some improvement in the stability of the arrhythmias. Dr. Westveld further noted that Courterier continued to have significant chest pain and was impaired even with mild exertion. Therefore, he opined that Courterier was totally impaired at that time.
 
 
 19
 On July 25, 1984, it was reported that Courterier was seen for a routine follow-up in the arrhythmia clinic. A Holter recording showed an improvement of 51 percent in the number of premature ventricular contractions, an improvement of 96 percent in couplets and a 100 percent improvement in ventricular tachycardia. It was also noted that Courterier had a tendency to manipulate his own medications.
 
 
 20
 On February 19, 1985, the ALJ issued a recommended decision finding that Courterier was not disabled; however, the Appeals Council declined to adopt this recommendation. The Appeals Council determined that, while Courterier was capable of performing sedentary work prior to January 23, 1984, Courterier's capacity for the full range of sedentary work had become significantly restricted by his nonexertional impairments subsequent to that date. Therefore, Courterier was determined to be under a disability beginning January 23, 1984.
 
 
 21
 The matter was reinstated on the district court's active docket. After hearing oral argument, the district court entered an order on May 30, 1986, granting surmary judgment in favor of the Secretary. This pro se appeal followed.
 
 II.
 
 22
 Pursuant to 42 U.S.C. Sec. 405(g), the Secretary's findings are conclusive if supported by substantial evidence. For there to be substantial evidence there must be "more than a mere.scintilla. It means such releVant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This court cannot base its decision entirely upon a single piece of evidence; the record must be evaluated as a whole. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).
 
 
 23
 This deferential st:andard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387 (11th Cir. 1982); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir. 1978). Even if the reviewing court would resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir. 1983).
 
 
 24
 Courterier raises arguments pertinent to the credibility of his complaints of pain, his treating physician's opinion, the Secretary's determination of the disability onset date and the Secretary's determination that Courterier possessed transferable skills. Although Courterier has set forth four separate issues, each essentially requires review solely on the question of substantiality of the evidence. Therefore, while we address each of Courterier's arguments, we will do so within the context of our substantial evidence inquiry.
 
 
 25
 Courterier first argues that the Appeals Council's finding that Courterier's subjective complaints of pain were not credible in light of the medical and other evidence was erroneous. In support of this argument he relies on the ALJ's finding that Courterier's complaints of pain were not "persuasive" and argues that such a finding be interpreted by this court as a finding of credibility. We believe there is no merit to this argument. The only logical conclusion to be drawn from the ALJ's finding is that he did not find Courterier's complaints to be credible.
 
 
 26
 Courterier also relies on three reports submitted by Dr. Westveld, the treating physician, as support for Courteriers's complaints of pain and inability to engage in any substantial gainful activity. Two of these reports, Dr. Westveld's letter of June 22, 1984, and the March, 1984 Holter monitor, relate solely to Courterier's condition after the January 23, 1984 disability onset date determined by the Secretary; therefore, consideration of this evidence is not relevant. The remaining report submitted by Dr. Westveld is a October 19, 1982 letter stating that Courterier was completely disabled at that time and would be unable to engage in any substantial gainful activity for the rest of his life. However, as this Circuit has held, a treating physician's medical opinions and diagnosis are accorded substantial deference, and, if uncontroverted, complete deference only if the treating physician supplies sufficient data to substantiate his diagnosis. See Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). In this instant case, Dr. Westveld's letter failed to document any ongoing treatment other than nitrate therapy or any recurrent arrhythmias. Additionally, Dr. Westveld begins by stating that Courterier had done relatively well since surgery. Such a statement appears to be inconsistent with a conclusory statement that Courterier would be disabled for the rest of his life. Dr. Westveld's report is also contradicted by the results of Courterier's May, 1982 stress test. On the basis of this test Courterier was determined to be capable of a full range of light work. Moreover, we note that Courterier's record lacks documentation of any medical treatment for pain from October, 1982, to January, 1984. Therefore, we do not believe that the Secretary abused his discretion in discounting Dr. Westveld's October, 1982 report and in determining that Courterier was capable of sedentary work.
 
 
 27
 Courterier next argues that the Secretary's determination of the disability onset date is erroneous. However, the claimant ultimately has the burden of establishing that he became unable to engage in substantial gainful activity by reason of physical or mental impairments, the existence of which is demonstrated by medically acceptable clinical and laboratory diagnostic findings. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). In the instant case, we believe that Courterier did not meet this burden in his effort to establish a disability date prior to January 23, 1984. As discussed above, the record is silent from October, 1982, until January 23, 1984, at which time the record documents the onset of serious coronary rhythm disturbances. There was no basis upon which the Secretary could have found a disability date prior to that date
 
 
 28
 Courterier lastly argues that the Secretary erroneously relied on 20 C.F.R. pt. 404, subpt. P, app 2, Rule 201.11, to direct a conclusion that Courterier was not disabled prior to January 23, 1984. He bases this argument upon the assertion that the Appeals Council erroneously found that he possessed transferable skills Recognizing that transferable skills are a necessary characteristic for application of Rule 201.11, Courterier argues that he possesses "aptitudes" as a result of his past employment rather than transferable skills.
 
 
 29
 In Ellington v. Secretary of Health and Human Services, 738 F.2d 159, 160 (6th Cir. 1984), this Circuit observed that transferable skills are specific and articulable abilities, which are learned.
 
 
 30
 Thus transferable skills for the purposes of the grid are made equivalent to education. Such skills refer to learned abilities which combine knowledge with coordinated movements, such as operating a typewriter, or a learned mental discipline, or an area of expertise.
 
 
 31
 Id. at 161. We believe that Courterier's past work falls squarely within this definition. The ability to perform locksmith work and to install and repair lighting fixtures would obviously require more than mere aptitude. Without question, such abilities must be learned and be combined with knowledge and coordinated movements. They are not "natural talents of learning and self-motivation." See Richardson v. Secretary of Health and Human Services, 735 F.2d 962, 964 (6th Cir. 1984)
 
 
 32
 In sum, it is only logical to conclude that Courterier's past employment, in locksmithing and lighting maintenance and repair encompassing a period of over 16 years, imparted transferable skills. Therefore, the Secretary correctly determined that Courterier possessed transferable skills.
 
 
 33
 Having concluded that substantial evidence supports the Secretary's determination of Courterier's disability onset date, we accordingly AFFIRM the judgment of the district court.