831 F.2d 1063
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John ALFORD, Plaintiff-Appellant,
v.
SECRETARY, HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-6116.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1987.
 
 Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 John Alford appeals from the judgment of the district court affirming the Secretary's denial of social security disability benefits and supplemental security income benefits. For the following reasons, we reverse and remand With instructions that the Secretary use the medical-vocational grid as contained in 20 C.F.R. pt. 404, subpt. p, app. 2, as a guideline rather than as a directive in determining Alford's entitlement to disability benefits.
 
 I.
 
 2
 On February 21, 1980, Alford applied for a period of disability, for disability insurance, and for supplemental security income benefits claiming inability to work from September 15, 1978, due to acute tendonitis, a double hernia, and possible skin cancer. His application was denied initially and upon reconsideration. Alford then requested an administrative hearing which was held on June 17, 1981. Alford was fifty-five years old at the time of the hearing.
 
 
 3
 Alford testified to the following at the hearing before the ALJ. He was born on May 30, 1926, and has a tenth grade education. He stated that he last worked as a roofer from 1970 to 1976, and, prior to that, for Cadillac Motor Car Company in Detroit from approximately 1948 to 1960, as a welder for ten years and as a job setter for two years. He worked for two days in May of 1977, at Fort Campbell and served in the Navy from September 18, 1944, through April 10, 1946.
 
 
 4
 Alford further testified that, in September of 1978, he realized he could no longer work. He currently suffers from rheumatoid arthritis, glaucoma, tuberculosis, skin cancer, bronchitis, and gastritus. The arthritis affects all his joints as well as his rib cage and causes him stiffness in his neck and pain in the back of his head. The two spinal blocks he had performed in his upper middle back cause him severe pain and an upset stomach. The skin cancer has caused lesions on his hands and beneath his left eye. He indicated that Dr. Kay Waiti has already removed some twenty-four such lesions from his hands and face. He takes Riopan for his gastritus and antibiotics, when necessary, for the bronchitis.
 
 
 5
 Alford then related at the hearing that he underwent surgery in August of 1980, and again in October of 1980, for bilateral and hiatal hernias. The hernias, first caused him pain and restricted his movement in 1976. Alford further indicated that he suffers acute tendonitis in his right shoulder. The pain "comes and goes" since he has been taking arthritis medication. Alford lastly indicated that doctors performed a vein stripping operation on both his legs in 1962, and that he had his left knee operated on in 1971. The latter surgery caused him to lose much strength in his left leg.
 
 
 6
 The following medical evidence was introduced at the hearing. Dr. Michael Collins, a family practitioner and Alford's treating physician, examined Alford on February 16, 1980. Collins diagnosed generalized osteoarthritis especially in his left hip and left knee, an unstable left knee joint caused by the medial menisectomy, recurrent tendonitis in his left shoulder, symptomatic hiatel hernia, glaucoma, and multiple skin cancer lesions. Collins concluded that Alford was totally disabled due to the above chronic and incurable conditions. In a report dated June 20, 1981, Collins again reported that he believed Alford to have been disabled at that time primarily because of his arthritis, tendonitis, hernias, and skin cancer lesions. He added that Alford had been symptomatic with at least one of these conditions each time he had seen him and that none had been satisfactorily under control.
 
 
 7
 Dr. Martin Fritzhand evaluated Alford on April 3, 1980. In his report, Fritzhand noted that Alford had degenerative joint disease of the lumbar spine and left hip with acute and chronic lumbosacral strain, tendonitis of the right shoulder, and a bilateral inguinal hernia. Fritzhand reported, in addition, that Alford ambulated with a normal gait, bent forward at the waist with ease, and appeared comfortable in the sitting and supine positions. Fritzhand reported that Alford's range of motion studies were all within normal limits, and no joint abnormalities, such as swelling or capsule thickening, were noted. He further found no evidence of nerve root compression, and all deep tendon reflexes were normal. Fritzhand noted that Alford's tolerance for standing, walking, stooping, bending, lifting, and sitting were all good and commensurate with his age group. Fritzhand concluded that Alford's functional impairment was less than severe.
 
 
 8
 Dr. Lynn D. Olson, an orthopedic surgeon who examined Alford on March 13, 1981, reported that Alford demonstrated significant degenerative changes in both the lumbar and cervical spines and had traumatic arthritis of the left knee, a condition which is progressive. Olson additionally noted that Alford could not tolerate heavy labor, long periods of standing or walking, or any activity requiring repetitive stooping, bending, or twisting. His exam additionally revealed neither neurological deficits nor significant decreases in his range of motion. Alford's reflexes, Olson added, were also normal.
 
 
 9
 Dr. James Carothers, conducted an orthopedic examination of Alford on March 28, 1981. He found that Alford's left knee demonstrated a full range of motion and that there was no rotary, medial, or lateral instability. Carothers, however, did find early degenerative joint disease in the medial compartment of Alford's left knee. Carothers further found no evidence of gross inflammation of any joint nor any evidence of sensory, motor or reflex abnormality. Alford's low back pain, Carothers opined, was simply mechanical and would respond to proper exercise, walking, and anti-inflammatory agents.
 
 
 10
 On the basis of this evidence, the Administrative Law Judge (ALJ) determined, on August 18, 1981, that Alford was not entitled to social security benefits at any time prior to May 30, 1981, since Alford, despite his mutiple impairments, could perform light-level work activity. The ALJ added that, on May 31, 1981, when Alford turned age fifty-five, he became "disabled" within the meaning of the Social Security Act and was entitled to a period of disability, to disability insurance benefits, and to supplemental security income benefits as of that date.
 
 
 11
 Alford appealed the ALJ's decision to the Appeals Council which, on August 26, 1982, reversed the ALJ. In so doing, the Appeals Council found that, due to Alford's multiple impairments and evidence of degenerative changes in his left knee and spine, Alford could no longer perform heavy work or extensive walking or standing but that he could still perform at least medium-level work activity. Upon considering Alford's residual functional capacity to perform at least medium-level work, together with his advanced age and limited education, the Appeals Council mechanically applied Rule 203-12 of the medical-vocational guidelines which directed the conclusion that Alford was not disabled, and, consequently, not entitled to benefits.
 
 
 12
 Alford then timely filed the instant action with he district court pursuant to 42 U.S.C. Sec. 405(g). The matter was referred to a magistrate. The magistrate, on August 25, 1986, filed his Report and Recommendation suggesting that Alford's complaint be dismissed. The magistrate determined: (1) that substantial evidence supported the Secretary's finding that Alford retained the residual functional capacity to perform medium-level work; and (2) that the Secretary properly applied Rule 203.12 of the grid to direct a conclusion that Alford is not disabled. Accepting the magistrate's recommendation, the district court affirmed the Secretary's denial of benefits on September 24, 1986. This appeal followed.
 
 
 13
 The only issue on appeal is whether there is substantial evidence in the record to support the finding of the Secretary that Alford retained-the residual functional capacity to perform a full range of medium-level work.
 
 II.
 
 14
 This court has jurisdiction on appeal to ,review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the findings of the Secretary in a social security case are conclusive if they are supported by substantial evidence. Accordingly, our review is limited to determining whether there is substantial evidence in the record to support the findings. " 'Substantial evidence' means 'more than a mere scintilla. it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401),cert. denied, 461 U.S. 957 (1983). In determining this question, we examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).
 
 
 15
 This deferential standard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir. 1978). Even if the reviewing court were to resolve the factual issues differently, the secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).
 
 
 16
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423 (d) (1) (A).[1] If the claimant is working, benefits are automatically denied. If a claimant has certain listed impairments, benefits are owing without further inquiry. 20 C.F.R. Sec. 404.1525(a). Neither of these factors is applicable in this case. If the individual is not working and does not have one of the listed impairments but has previously worked, as in this case, the Secretary must next determine whether the claimant can return to the job he previously held. By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir. 1978), the claimant establishes a prima facie case of disability. In the instant case, the Secretary found that the claimant was not capable of returning to his particular occupation.
 
 
 17
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, as well as the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of, job. 42 U.S.C. Sec. 423 (d) (2) (A) ; 20 C.F.R. Sec. 404.1520 (f) (1) ; Heckler v. Campbell, 461 U.S. 458, 460 (1983) .
 
 
 18
 The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." see 20 C.F.R. pt. 404, subpt. P, app. 2. If the characteristiCs of the claimant do not identically match the description in the grid, however, the grid is used only as a guide to the determination. Kirk, 667 F.2d at 528. In the instant case, the Secretary found that the characteristics of the claimant did identically match the grid. Specifically, the Secretary found that Alford retained the residual functional capacity to perform medium work and that Alford was of advanced age and bad a limited education. The Secretary then applied Rule 203.12, 20 C.F.R. pt. 404, subpt. P, app. 2, which directed the conclusion that Alford was not disabled, and, therefore, not entitled to social security benefits.
 
 A.
 
 19
 Initially, Alford argues that the secretary erred in finding that he retained the residual functional capacity to perform a full range of medium work. He contends that such finding directly contradicts the Secretary's finding that he was not capable of extensive walking or standing.
 
 
 20
 C.F.R. 404.1567 (c) defines as ,medium work" that which, "involves lifting 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." The definition further provides that if an individual is found capable of performing medium work, he can also perform light work.
 
 
 21
 C.F.R. 404.1567(b) provides in part that a job falls within the "light work', category when, "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." The definition continues that, "[t]o be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities." Social Security Ruling 83-10 elaborates that the ability to perform a full range of light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."
 
 
 22
 Thus, because the medium work definition incorporates the definition for light work, an individual found capable of performing a full range of medium work must have the ability to do "a good deal of walking or standing," which, according to Social Security Ruling 83-10, means standing or walking, on and off, for roughly six hours out of an eight-hour day.
 
 
 23
 The record, in this case, indicates that x-rays of Alford's left knee and spine reveal significant degenerative changes. moreover, Dr. Olson noted that the degenerative condition of Alford's left knee is progressive and that Alford could not be expected to tolerate long periods of walking or standing. The Secretary, accordingly, found that Alford could not perform work involving extensive walking or standing.
 
 
 24
 Since the Secretary found, in the present case, that Alford could not perform work involving extensive walking or standing, the Secretary could not have properly found that Alford could perform a full range of medium work.
 
 
 25
 Because the Secretary's findings precluded the conclusion that Alford could perform a full range of medium work, the Secretary erred in mechanically applying Rule 203.12 of the grid, 20 C.F.R. pt. 404, subpt. P, app. 2, to direct the conclusion that Alford was not disabled and consequently not entitled to benefits. The Secretary should have instead used the grid only as a guideline in determining Alford's entitlement to benefits because his characteristics of residual functional capacity to work, age, education, and work experience do not correspond precisely with those of the grid. This case must therefore be remanded to the district court with direction to remand to the Secretary with instruction to use the grid merely as a guideline rather than as a directive in determining Alford's entitlement to benefits.
 
 B.
 
 26
 In light of the above remand, it is unnecessary at this time to decide whether the Secretary afforded due deference to Alford's treating physicians or whether the Secretary properly evaluated Alford's subjective complaints of pain.
 
 
 27
 On remand, however, the Secretary may be guided on these issues by this court's previous decisions in Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985) and Duncan v. Secretary of Health & Human Servs., 801 F.2d 847 (5th Cir. 1936).
 
 
 28
 In Harris, this court held that "[t]he medical opinions and diagnosis of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." Harris, 756 F.2d at 435. This is true, however, only if the treating physician's opinion is supported by sufficient medical data. Id. Ultimately, it is the prerogative of the Secretary, not the treating physician, to determine disability.
 
 
 29
 With respect to subjective complaints of pain, this court has previously determined that such complaints may support a claim of disability. Duncan v. Secretary of Health and Human Servs., 801 F.2d 847, 852 (6th Cir. 1986). To support such claim, however, there must be objective medical evidence of an underlying medical condition in the record. Id. If so, the court must then determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce such pain. Id.
 
 
 30
 Accordingly, the judgment of the district court is REVERSED, and we remand this case to the district court and direct that it remand to the Secretary with instructions to use the grid as a guideline in determining Alford's entitlement to social security benefits.
 
 
 
 [1]
 Section 423 (d) (1) (A) provides:
 Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.