850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Samuel E. MILLS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1702.
 United States Court of Appeals, Sixth Circuit.
 July 8, 1988.
 
 Before CORNELIA G. KENNEDY and NATHANIEL A. JONES, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Samuel Mills appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (the Secretary) in his action seeking judicial review of the final decision of the Secretary denying his claim for a period of disability and disability benefits under section 216(i), 223 of the Social Security Act (the Act). 42 U.S.C. 416(i), 423. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 In this case, claimant's insured status for disability benefits expired on September 30, 1977. Therefore, claimant's task was to establish that he was disabled on or before September 30, 1977. As of that date, claimant was thirty-eight years old. He has a sixth grade education and no further vocational training. His past relevant work was as a construction worker. He suffers from gouty arthritis and alleges that his condition causes him disabling pain.
 
 
 3
 Claimant initially filed a claim for disability benefits on April 14, 1977. This application was denied initially and upon reconsideration. The denial of reconsideration was dated August 26, 1977. Claimant did not seek review of this decision and it became the final decision of the Secretary.[1]
 
 
 4
 On July 16, 1984, claimant once again filed applications for Supplemental Security Income and Disability Insurance benefits. Both applications were denied initially and upon reconsideration. The claimant requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on October 22, 1985. At the hearing, medical evidence was introduced along with the testimony of the claimant, his wife, and a vocational expert.[2]
 
 
 5
 The following medical evidence was introduced before the ALJ. The office notes of Dr. Robert Streicher, claimant's treating physician, who had been treating claimant for recurring gouty arthritis. The condition was noted at various times in both feet, hands, wrists and knees. While some improvement was noted at times, the condition was persistent. In a May 11, 1977 report to the Michigan Department of Social Services, Dr. Streicher opined that claimant was totally and permanently disabled. Dr. Steicher repeated this conclusion in later reports to the Department of Social Services and in a letter to claimant's attorney dated November 6, 1985.
 
 
 6
 In August of 1977, a physical capacity evaluation based on documented evidence submitted by the examining physician revealed that claimant could frequently lift 10 pounds or less, stand and walk as much as two of eight hours, sit as much as six of eight hours, use his upper extremities for pushing/pulling, gross manipulation and fine manipulation. The report indicated, however, that claimant could not bend, kneel or climb stairs or ladders.
 
 
 7
 In April of 1979, Dr. Sara E. Walker, a consulting physician, examined claimant. Dr. Walker believed claimant suffered from polyarticular chronic polyarthritis with tophi. X-rays showed changes in the feet which were characteristic of gout. A physical exam showed no active synovitis although he did have the previously noted tophi and joint changes. Although hospitalization for treatment was recommended, claimant refused to take this course.
 
 
 8
 On June 8, 1981, Dr. Scott Bernstein, a consulting physician from the University of Michigan, forwarded a medical report to claimant's treating physician. Dr. Bernstein noted that claimant's past history was significant for tophaceous gout for 20 years. He continued having involvement of the metatarsophalangeal joints, knees, and small joints of the hands bilaterally. Physical exam revealed swelling of the MTP joint bilaterally, painful on flexion. Knees were normal bilaterally without effusion, mild swelling of the MCP joints of the first and second digits of both hands, without effusion. Motor had decreased grip in left hand. Sensory revealed possible decreased pinprick of the left distribution over the hand. Carpal tunnel syndrome was noted in the left hand.
 
 
 9
 A medical report dated July 13, 1981, revealed that claimant suffered the following clinical problems: gout, and carpal tunnel syndrome. The radiologic diagnosis was soft tissue swelling of second, fourth and fifth digits of the right hand, no bony or joint lesions.
 
 
 10
 In August of 1981, plaintiff underwent left carpal tunnel release. After surgery, Dr. Kevin Lillehei, of the University of Michigan, noted that claimant was doing well status-post left carpal tunnel release.
 
 
 11
 Medical records from September of 1980, through June of 1984, submitted by Dr. Streicher, continued to document claimant's weekly visits due to recurrence of gouty arthritis, and the need for treatment.
 
 
 12
 On May 20, 1984, claimant was admitted to Mercy Memorial Hospital in Monroe. Cortisone treatments were prescribed due to the arthritic pain plaintiff was experiencing in his feet.
 
 
 13
 In August of 1984, claimant was examined by Dr. J.K. Desai, a consulting physician. Musculoskeletal system examination revealed lumbar spine motion restricted in all planes. Multiple tophi was noted over the joints of the hands, the joints, the wrists, the ankles, the knees, and the elbows. There was marked limitation of the joints of both hands, it being pronounced more on the right side. The hand grip was very feeble bilaterally. Plaintiff could barely make a grip on the right side. There was no evidence of joint effusion. Claimant walked cautiously and had a slow limping gait. The doctor commented that plaintiff's chief impairment was chronic tophaceous gout with multiple tophi over the I.P. joints of the hands as well as the tendoachilles and the elbows bilaterally. The hands were inflammed and deformed from tophi. His hand grip was very feeble especially on the right side. He had great difficulty in buttoning and unbuttoning his shirt as well as taking care of his personal need. The other joints did not appear to be acutely inflammed and there was no evidence of synovitis of joint effusion. X-rays of his left hand, and both feet supported the diagnosis of gouty or rheumatoid arthritis.
 
 
 14
 In addition to the documentary evidence, the Secretary considered the testimony of Mills, his wife, Rose Mary Mills, and Dr. Goldstein, the vocational expert.
 
 
 15
 The ALJ carefully questioned Mills concerning his condition as it existed in 1977. Mills testified that the most important thing that kept him from working then was the severe pain in his legs and feet. He related that his condition had worsened over the last four or five years and that prior to that his walking had not been as impaired as it currently was. He related that up until then he had been able to help cook and wash dishes. In response to questioning by his attorney, however, Mills claimed that his impairment in his hands and feet was just as severe in 1977 as it was at the time of the hearing. He stated: "And then it started going in '77, that I could not move."
 
 
 16
 Mills' wife corroborated Mills' testimony of his current condition and testified that his condition had worsened over the years. She stated that in the last three or four years he had been unable to help out at all around the house. She noted that Mills had gone fishing "a couple of times" last year, but had not been able to fish at all in 1984.
 
 
 17
 Dr. Goldstein, the vocational expert, testified that Mills' past relevant work as a construction laborer was unskilled, heavy work. He noted that, if all Mills' testimony was taken as entirely credible, Mills would be unable to perform his past work or any other job because of his severe pain and physical limitations. In answering a hypothetical question posed by the ALJ, the vocational expert stated that a person of claimant's age and educational and employment background who could lift only twenty pounds and lift only ten pounds on a frequent basis and who could do no fine manipulation nor raise his arms above shoulder level would be limited to sedentary work. He estimated that there were approximately 10,000 jobs in the state of Michigan which a person with the above impairment could perform.
 
 
 18
 After receiving this evidence, the ALJ found that on or before September 30, 1977, the claimant's symptoms were not very acute and he had the capacity to perform the significant number of local sedentary jobs described by the vocational expert. Within the framework of Rule 201.24 of Table 1, Appendix 2, Subpart P, Social Securities Regulation No. 4, the ALJ found claimant to be not disabled prior to September 30, 1977.[3]
 
 
 19
 Claimant brought an action in district court seeking review of the Secretary's decision. 42 U.S.C. Sec. 405(g). The case was referred to a magistrate who concluded that the Secretary's finding that claimant was not disabled on or before September 30, 1977 was not supported by substantial evidence and recommended that the Secretary's decision be reversed. The district court rejected this recommendation, and affirmed the Secretary's decision. Claimant timely appeals from this decision.
 
 
 20
 Claimant argues that the Secretary's finding of no disability on or before September 30, 1977 is not supported by substantial evidence. Claimant asserts that he was totally disabled by pain, and that the diagnosis of his treating physician establishes his disability.
 
 II.
 
 21
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight." Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 22
 Claimant's first argument is that the Secretary's finding of no disability is not supported by substantial evidence because of the uncontradicted opinion of his treating physician that he was totally disabled in the late summer of 1977.
 
 
 23
 The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. This is true, however, only if the treating physician's opinion is based on sufficient medical data. Ultimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician.
 
 
 24
 Harris v. Heckler, 756 F.2d 431 (6th Cir.1985).
 
 
 25
 In making his finding that claimant is not disabled, the ALJ made the following comments concerning the treating physician's opinion.
 
 
 26
 Mr. Streicher's voluminous medical notes do establish the existence of gout since the early 1970s. However, those voluminous notes actually contain very very few clinical findings. In such notes, there is very little mention of any swelling, tenderness, or reduced range of motion. Dr. Streicher's notes surely do not establish chronic acute swelling, severe tenderness, or a marked reduction of motion. Dr. Streicher has not reported muscle weakness, a sensory loss, effusion, atrophy, stepitus, or a poor gait. His x-ray findings have been very unremarkable. Basically, Dr. Streicher's voluminous notes merely indicate recurrences of gout over the years. His specific findings are negligible.
 
 
 27
 The ALJ's finding that claimant is not disabled is supported by the following evidence. Dr. Streicher's notes for 1977 are bereft of clinical findings. While Dr. Streicher occasionally notes swelling and redness, and claimant's complaints of pain, the office notes mainly consist of alternating notations concerning the "recurrence of gout" in various joints and improvement in claimant's condition. While later medical reports from Dr. Walker confirmed the diagnosis of gout, she did not express an opinion on claimant's disability. Furthermore, while the reports from Dr. Desai and an x-ray report in 1984 indicated gouty rhematoid arthritis, they expressed no opinion nor shed no light on the severity of claimant's condition in the late summer of 1977. Finally, a residual functional capacity assessment performed in August of 1979 revealed that given claimant's strength limitations, he could perform sedentary work. The assessment included, however, an observation that claimant could not perform fine manipulation. Given claimant's non-exertional impairment, the ALJ considered the testimony of a vocational expert who stated that given claimant's strength and nonexertional limitations, there existed in the State of Michigan in 1977, 10,000 jobs which he could have performed.
 
 
 28
 Given the foregoing evidence, we conclude that the ALJ did not err in finding that claimant was not disabled on or before September 30, 1977, in spite of the contrary opinion of claimant's treating physician.
 
 
 29
 Claimant's second argument is that the Secretary's finding that he was not disabled between August 27, 1977 and September 30, 1977 is not supported by substantial evidence because he established that he suffered from disabling pain. He cites to the testimony of himself and his wife and to the reports of his treating physician.
 
 
 30
 In discounting the claimant's allegations of disabling pain, the ALJ noted the following contradicting evidence derived from claimant's testimony.
 
 
 31
 The claimant's testimony reveals that his gout has been much more restricting during the past two years than prior to such time. The claimant testified that eight to nine years ago (1976-77), he went fishing often. He did not stop fishing frequently until 1984. Until approximately 1981, he was driving a fair amount, cooking, and doing light tasks around his home. The claimant testified that he used to walk more in the early 1980s. After an economic layoff in 1975, the claimant looked for other work. He worked periodically in the latter 1970s and early 1980s. The claimant received unemployment compensation after the economic layoff. When he did so, he declared that he was ready and able to work. The claimant testified that his feet prevented him from working until a couple of years ago. The aforementioned sedentary jobs require very little standing and walking. The claimant added that during the past two years, he has been much worse. The claimant testified that four to five years ago, he was able to drive for a prolonged period. Exhibit 19 indicates that the claimant's condition worsened after a 1979 accident. There is no medical evidence of a carpal tunnel syndrome until 1981.
 
 
 32
 We review claimant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).
 
 
 33
 The Secretary concedes that claimant has demonstrated an underlying medical condition--his gouty arthritis. Although the ALJ did not explicitly follow the rubric of Duncan, his findings can be read as implicit findings that there was no objective medical evidence to confirm the severity of claimant's alleged pain or the severity of his impairment.
 
 
 34
 The only medical evidence which pertains to claimant's allegations of severe pain during the relevant time period is the office notes of Dr. Streicher in which Dr. Streicher alternatively noted claimant's complaints of pain and aching and improvement in his condition. As we have noted, Dr. Streicher's conclusion of disability is not supported by clinical findings. While later medical findings established claimant's disability as of June 16, 1984, these findings shed little light on claimant's condition during the thirty-five day period relevant to his claim for disability insurance benefits.
 
 
 35
 Therefore, we conclude that there is substantial evidence to support the ALJ's finding that the claimant was not suffering from disabling pain between August 27, 1977 and September 30, 1977.
 
 
 36
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Accordingly, this determination is res judicata as to the issue of disability on or before August 26, 1977. See Wills v. Secretary, Health and Human Servs., 802 F.2d 870, 871 n. 2 (6th Cir.1986)
 
 
 [2]
 The ALJ also admitted portions of the Social Security file concerning claimant's April, 1977 application
 
 
 [3]
 The ALJ also found that claimant was disabled under Title XVI of the Act as of July 16, 1984. This determination is not contested on appeal