985 F.2d 559
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Geneva CAUDILL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-3525.
 United States Court of Appeals, Sixth Circuit.
 Feb. 1, 1993.
 
 Before BOYCE F. MARTIN, JR., MILBURN, and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Geneva Caudill appeals the district court's order affirming the determination by the Secretary of Health and Human Services that Caudill was not disabled and was, as a result, not entitled to Social Security disability insurance benefits. For the following reasons, we affirm.
 
 I. Medical History
 
 2
 In 1977, Geneva Caudill was in a car accident. Shortly after the collision, Caudill was admitted to Bayview Hospital, where she remained for several weeks. X-rays taken at the hospital revealed some degree of degenerative change in the lumbar and thoracic spine. The x-rays did not demonstrate any fracture or dislocation. The hospital discharged her on August 20, 1977. At that time, Dr. Philip Blitz, her treating physician, issued a final diagnosis of acute recurrent cervical, dorsal myofascitis; osteoarthritis of the spine; cystocele; and functional polyuria. Despite these injuries, Caudill returned to work until 1981. During that period, Caudill was a supervisor for a convenient store chain known as Producer's Milk Company. She spent much of her time at work on her feet, and she sometimes lifted items weighing as much as 50 pounds.
 
 
 3
 On September 21, 1981, Caudill was hospitalized at St. John and Westshore Hospital with complaints of pain in her back, neck, and left leg. A physical examination revealed marked tenderness at the L-4/L-5 level and marked tenderness over the left sacroiliac joint. The results of an EMG taken at the time suggested L-5 radiculopathy. The discharge diagnosis, made on September 30, 1981, included acute lumbosacral strain, lumbar arthritis, and L-5 disc syndrome. Beginning in September of 1981, Caudill received benefits for temporary total disability under the Workers' Compensation program. Over the following years, her condition deteriorated as reflected in the medical records stated below.
 
 
 4
 Caudill underwent several examinations in 1983. On April 16, 1983, Dr. Blitz examined Caudill and reported that she had chronic recurring low back pain. He noted that she had bilateral decreased sensory loss in the lower extremity and a limited range of motion in the lower back. On July 28, 1983, Dr. Blitz provided a statement to Caudill's attorney that reported that Caudill was totally disabled because of her low back pain and cervical dorsal and lumbar myofascitis. On September 19, 1983, a Workers' Compensation physician examined Caudill. His diagnosis was lumbar disc degeneration with left lumbar radiculopathy. He noted that a test of raising her straight leg was positive at 60 degrees on the left and 70 degrees on the right. His conclusion was that she suffered from partial disability.
 
 
 5
 The next examination occurred June 26, 1984. Dr. William Reynolds, another Worker's Compensation specialist, filed a report in which he noted decreased range of motion in her spine and neck. Moreover, her left calf measured 3/4 inch less than her right calf. Dr. Reynolds concluded that she had a 40 percent loss of ability to function.
 
 
 6
 The next examination in the record is dated June 25, 1986, by Dr. Gilbert Gross. Upon examination of Caudill, Dr. Gross determined that she was experiencing tenderness to palpation at the lower cervical vertebrae. Forward flexion was limited to about 15 or 20 degrees. In addition, Caudill's neck motion was limited to about 50 percent of normal in all directions. Based upon the results of the examination, Dr. Gross concluded that Caudill could not return to her previous type of work and that Caudill's condition was rapidly approaching permanency. On July 23, 1986, Dr. Blitz issued a statement that Caudill was totally disabled and unable to engage in any occupation involving her back.
 
 II. Procedural History
 
 7
 Caudill initially filed an application for disability benefits on March 22, 1983. She claimed that she became permanently disabled in April 1981 as a result of back injuries from the automobile accident in 1977. The Social Security Administration denied her application, both upon her initial filing and upon reconsideration of her application. Caudill then requested a hearing before an administrative law judge. Before a hearing was conducted, however, Caudill sought to withdraw her claim. The administrative law judge granted her request for withdrawal and dismissed her request for a hearing.
 
 
 8
 On August 30, 1988, Caudill again applied for social security disability benefits, claiming that her previous back injuries had permanently disabled her. Due to res judicata, this second application was considered only for the closed period from August 22, 1983 through December 31, 1986, the date when Caudill last met the insured status requirements. This application was denied initially and on reconsideration. Caudill requested a hearing before an administrative law judge. The administrative law judge held a hearing and issued his decision on September 14, 1989. The administrative law judge found that Caudill was not under a disability as defined by the Social Security Act from August 23, 1983 through December 31, 1986. The administrative law judge determined that Caudill had the residual functional capacity to perform a full range of light work, even though she was unable to perform her prior work as a supervisor of a convenient store. Accordingly, the administrative law judge used the Medical-Vocational Guidelines (the grid), 20 C.F.R. Part 404, Subpart P, Appendix 2, to determine that Caudill was not disabled.
 
 
 9
 The administrative law judge's decision became the Secretary's final ruling on May 10, 1990, when the Appeals Council denied Caudill's request for review of the administrative law judge's decision. On July 10, 1990, Caudill filed a complaint in district court pursuant to 42 U.S.C. § 405(g). Upon the consent of the parties, this case was referred to a magistrate judge to conduct further proceedings and enter judgment in the case.
 
 
 10
 On March 26, 1992, the magistrate judge issued a memorandum, opinion, and order that affirmed the Secretary's decision to deny Caudill's claim. On May 26, 1992, Caudill filed a timely notice of appeal.
 
 III. Standard of Review
 
 11
 This case presents no disputed questions of law; therefore, the standard of review for the Secretary's findings of fact is whether the factual findings made by the Secretary are supported by substantial evidence. See 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate. Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantiality of the evidence must be based on the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). On review, the court should consider anything in the record that "fairly detracts from its weight.' " Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). However, the Secretary, rather than the court, is charged with the duty to weigh the evidence, to resolve material conflicts in testimony, and to determine the case accordingly. Richardson v. Perales, 402 U.S. at 390-91. In addition, the Secretary makes determinations on issues of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 IV. Disability Insurance
 
 12
 In essence, Caudill's argument is that the district court improperly ignored both reliable indicators of pain and Caudill's complaints, and that the court improperly rejected the opinions of the examining physicians. In regard to indicia of pain, Caudill alleges that the administrative law judge failed to address Social Security Ruling 88-13 adequately. In evaluating the severity of pain, the agency must follow the guidelines provided in SSR 88-13. Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir.1991). In Jones, this court noted what the agency recognizes as "reliable indicators" of pain in relation to one's inability to work: "[m]edical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, [and] sensory and motor disruption." Jones, 945 F.2d at 1369-70 (citing SSR 88-13).
 
 
 13
 Caudill argues that the district court's decision in the present case is inconsistent with the rule of Jones. Caudill maintains that the Secretary ignored reliable indicators of pain, including limitations on range of motion, spasm, atrophy, and sensory loss when it determined that she was not disabled. Caudill points to evidence in the doctors' reports of reduced joint motion, muscle atrophy in the left calf as indicated by the 3/4 inch difference, and chronic radiculopathy.
 
 
 14
 The decision in Jones does not eliminate the requirement that the Secretary consider the consistency of the claimant's testimony with the medical evidence. Jones, 945 F.2d at 1370. Caudill's testimony was inconsistent with her assertions; therefore, the Secretary properly concluded that her testimony lacked credibility. For instance, Caudill flew to Florida on several occasions despite her testimony that her condition required her to alternate constantly between sitting and standing. Caudill also claimed that she had trouble walking, but she does not have any type of ambulatory aid. Moreover, she claims that her pain has led to an inability to concentrate, but she says that she does crossword puzzles.
 
 
 15
 Caudill also contends that both the administrative law judge and the magistrate improperly rejected the opinion of Dr. Blitz, the treating physician. Through the course of his treatments, Dr. Blitz concluded that Caudill is totally disabled. According to Caudill, the administrative law judge never explicitly rejected Dr. Blitz's medical opinion before issuing a decision to the contrary. In addition, the magistrate merely noted that the CT scan showed no evidence of disc herniation before determining that Dr. Blitz's opinion was not supported by substantial evidence. Caudill argues that the result of the CT scan is a poor rationale for the magistrate's decision. Caudill never claimed any type of disc herniation. Instead, she stated that her condition was related to muscular, soft-tissue problems (lumbosacral strain; lumbar and cervical myofascitis).
 
 
 16
 It is well established that a treating physician's opinion should be given considerable weight when it is based on objective evidence. See Harris v. Heckler, 756 F.2d 431 (6th Cir.1985). However, the Secretary is not bound by any treating physician's conclusions of disability unless these opinions are supported by medically acceptable clinical or diagnostic data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir.1984).
 
 
 17
 Dr. Blitz concluded, without much medical support, that Caudill's condition prevented her from pursuing all work opportunities. Such broad, conclusory statements, regarding the ultimate issue that is to be decided by the Secretary, are not determinative of the question of whether a person has a disability. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). This general rule is particularly applicable when the disabling condition is pain. Kirk, 667 F.2d at 538.
 
 
 18
 In conclusion, substantial evidence supports the Secretary's decision that Caudill was capable of performing light work prior to the date that Caudill last met the insured status requirements and that, therefore, she was not disabled. Accordingly, this court affirms the judgment of the district court upholding the Secretary's decision to deny Caudill disability insurance benefits.