756 F.2d 431
 9 Soc.Sec.Rep.Ser. 33, Unempl.Ins.Rep. CCH 15,883
Freda HARRIS, Executrix for the Estate of Harold Harris,
Plaintiff-Appellant,
v.
Margaret HECKLER, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 83-3588.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Oct. 11, 1984.
Decided March 1, 1985.
 
 Daniel L. Manring, Columbus, Ohio, for plaintiff-appellant.
 Joseph Kane (Lead), U.S. Atty., Nicholas J. Pantel, Asst. U.S. Atty., Columbus, Ohio, Steven J. Plotkin, Asst. Regional Atty., Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.
 Before EDWARDS* and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.
 WEICK, Senior Circuit Judge.
 
 
 1
 Plaintiff-appellant Freda Harris, the mother of Harold Harris (Harold) and the executrix of his estate, has appealed to this court from a summary judgment rendered in the United States District Court for the Southern District of Ohio, Eastern Division, affirming the decision of defendant-appellee Secretary of Health and Human Services denying Harold's application for social security disability benefits. This action was commenced by Harold but he died soon after filing the complaint and Freda Harris has been substituted as the party plaintiff. For the reasons hereinafter stated, we reverse and remand for an award of benefits.
 
 I.
 
 2
 At the time that he filed his application for social security disability benefits on June 9, 1980, Harold was 47 years of age. He had completed his education through the ninth grade. For over 27 years, prior to his retirement in 1977, Harold had worked in the mines as a coal miner. His retirement was precipitated by various physical maladies which, he contended, prevented him from engaging in work activities.
 
 
 3
 A few years before he retired, Harold was involved in an accident which caused him to suffer back pains. In 1977, Harold was examined by Dr. J.J. DelVecchio, who determined that Harold had severe lower back pain, a markedly straightened lumbar spine, arthritis in both knees and anterior lipping of the vertebrae in the lumbar area. Since that initial examination, Harold has returned to Dr. DelVecchio on several occasions. These examinations have shown, according to DelVecchio, that Harold is unable to stand without experiencing lower back pain. Harold was diagnosed as having osteoarthritis of the lumbar spine and in both knees. Dr. DelVecchio also determined that Harold was suffering from paravertebral muscle spasticity in the lower lumbar back area and that he was unable to bend more than 30 degrees without experiencing pain. Harold was found to be overweight and it was recommended that he control his calorie intake. Finally, Dr. DelVecchio reported that Harold had told him that he could not walk or lift objects without suffering back pain and that he could not even push a supermarket shopping cart. These examinations led Dr. DelVecchio to conclude, on March 5, 1979, that Harold was 100 percent permanently disabled.
 
 
 4
 In May and June of 1977, x-rays were taken of Harold's lumbar spine, chest and knees. The spine x-ray revealed that Harold had a slight straightening of the curve and minimal anterior lippings of the lumbar vertebrae. The chest x-ray indicated that Harold was probably suffering from pneumoconiosis. The knee x-rays failed to show any signs of degenerative arthritis, although they did show that there may have been some hypertrophic lipping. The knee x-rays also indicated that the joints were well maintained and that there was no evidence of loose body formation.
 
 
 5
 Harold was examined by Dr. Dan Daneshvari in 1977 for his respiratory problems. Dr. Daneshvari initially concluded that Harold had a combined moderate to severe restrictive and mild obstructive impairment. A subsequent examination in 1979 revealed that Harold suffered from pneumoconiosis and an advanced impairment of the gas exchange at the alveocapillary level which had not been in evidence during the 1977 examination. Dr. Daneshvari noted that these respiratory problems reduced Harold's ventilatory function by more than 50 percent. Daneshvari concluded that, because of his worsened respiratory condition, Harold was totally and permanently disabled with regard to coal mining or any comparable job.
 
 
 6
 Dr. Daneshvari's findings were confirmed by Dr. William M. Chinn. Dr. Chinn determined that Harold had high blood pressure, a simple pneumoconiosis and a moderate degree of pulmonary impairment in the 40-55 percent range. He concluded that Harold was permanently and totally disabled for any occupation requiring even the least amount of physical effort.
 
 
 7
 Dr. DelVecchio conducted another examination of Harold in 1980. This examination confirmed Dr. Daneshvari's conclusion that Harold's condition was worsening. Harold was only able to bend his back 10 or 20 degrees and he told DelVecchio that his back often locked when he bent over. Harold's left knee was also giving him great pain whenever he walked or twisted it. Dr. DelVecchio determined that there was some lateral bending of Harold's left knee joint and that it was more pronounced than during his previous examinations. On the positive side, DelVecchio noted that Harold's blood pressure had been brought under control through medication. Based on his examination, DelVecchio concluded that Harold was 100 percent disabled as far as any work is concerned and that his condition was deteriorating.
 
 
 8
 Also, during 1980, Harold was examined by Dr. Bihani Shah. This examination was conducted at the request of the Bureau of Disability Determination. Dr. Shah concluded from his examination that Harold had a case of chronic black lung disease and hypertensive cardiovascular disease, exacerbated by his chronic smoking and obesity. Dr. Shah also found evidence of arthritis in Harold's knee joints and back.
 
 
 9
 Harold was also examined by Dr. C.N. Patel. Dr. Patel found that Harold could bend about 70 degrees, appeared to have no problem walking and was able to straighten his leg while lying on his back. Patel noted that Harold had some difficulty arising from a squatting position. X-rays of Harold's spine, knees and chest were taken. The spine x-ray was essentially negative and the chest x-ray was normal. The knee x-rays showed that Harold had degenerative osteoarthritis of his knees, especially at his left knee. Dr. Patel also diagnosed Harold as having chronic lumbo-sacral strain with referred pain to the dorsal spine, exogeneous obesity and chronic pulmonary disease.
 
 
 10
 In June 1980, Harold filed a claim for social security disability benefits. He also applied for and was awarded Black Lung benefits and Workers' Compensation. His claim for disability benefits was initially denied. A hearing was then held before an Administrative Law Judge (ALJ) in November 1981 on his disability application. At the hearing, Harold described his respiratory, back and knee problems. He indicated that he was unable to sleep in a bed because of his back problem and that he had to sleep cuddled up in a chair. He also told the ALJ that he was unable to do many household chores and that he had difficulty walking more than a few hundred feet at a time. Harold explained that he quit his job because he could not get around and because of his respiratory problems. The aforementioned medical evidence was also presented to the ALJ.
 
 
 11
 The ALJ issued his decision denying Harold's disability claim on December 28, 1981. In his opinion, the ALJ recognized Harold's respiratory, back and knee problems but concluded that they did not meet or equal one of the listed impairments in Appendix 1 of the Social Security Administration's regulations. With regard to Harold's claims of great back pain and shortness of breath, the ALJ found that the medical evidence in the record and Harold's appearance at the hearing did not substantiate these claims and, in fact cast doubt on Harold's credibility as a witness. The ALJ concluded that Harold's residual functional capacity from his exertional impairments limited him to sedentary work and that his non-exertional impairments did not significantly affect his residual functional capacity. Applying Rules 201.19 and 201.20 of Appendix 2, the ALJ ruled that Harold was not disabled. The ALJ's decision became the final decision of the Secretary on April 22, 1982, when the Appeals Council rejected Harold's request for review.
 
 
 12
 Harold filed an action in U.S. District Court, on May 12, 1982, seeking judicial review of the Secretary's decision. Both parties moved for summary judgment. On July 12, 1983, the court granted the Secretary's motion. In its opinion, the court held that there was substantial evidence to support the ALJ's finding that Harold was not disabled.
 
 
 13
 In this appeal, appellant-Executrix contends that the ALJ's decision was not supported by substantial evidence because: (1) he improperly based his finding on his lay observation of Harold at the hearing; and (2) he failed to give proper weight to the medical opinion of Harold's treating physician, Dr. DelVecchio, and his other physicians. It does seem somewhat strange that, in view of the allowance of Black Lung and Workers' Compensation benefits to Harold by those other responsible agencies, the Secretary would have the audacity to claim here that Harold was not disabled and could perform sedentary work of some kind and that he was not, therefore, entitled to Social Security benefits.
 
 II.
 
 14
 A determination that an individual is disabled shall be made "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. Sec. 423(d)(2)(A). This determination is reserved exclusively to the Secretary of Health and Human Services or to an approved state agency. Id. Sec. 421. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Id. Sec. 405(g). "Substantial evidence" means more than a mere scintilla of evidence. There must be sufficient evidence that a reasonable person would accept as adequate to support the conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Further, this evidence must be based on the record as a whole. Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.1984); Houston v. Secretary of Health and Human Services, 736 F.2d 365, 366 (6th Cir.1984); Allen v. Califano, 613 F.2d 139 (6th Cir.1980). Accordingly, this court must review the record in its entirety to determine if the ALJ's finding that Harold is not disabled is supported by substantial evidence.
 
 
 15
 The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). This is true, however, only if the treating physician's opinion is based on sufficient medical data. Garner, 745 F.2d at 391; Houston, 736 F.2d at 367. Ultimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician. Garner, supra; Houston, supra; Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In the instant case, Harold's treating physician, Dr. DelVecchio, conducted a series of physical examinations over several years and he was, therefore, in a unique position to evaluate Harold's condition. Consequently, his considered opinion that Harold was incapable of engaging in other gainful employment and that he was 100 percent disabled must be given significant weight by this court.[1]
 
 
 16
 The ALJ concluded that Harold was capable of doing sedentary work. "Sedentary work", as defined by the Secretary's regulations, involves lifting no more than ten pounds at a time, a certain amount of walking and standing but primarily sitting. 20 C.F.R. Sec. 404.1567(a). There is a complete absence of evidence in this record that Harold is capable of doing sedentary work. Dr. DelVecchio's examination showed that Harold had severe back and knee problems which substantially limited his ability to bend, walk or lift objects. While Dr. Patel's tests indicated that Harold had somewhat greater mobility than Dr. DelVecchio's tests revealed, they still showed that he had degenerative osteoarthritis of both knees and chronic lumbo-sacral strain with referred pain to the dorsal spine. Dr. Shah's tests also confirmed that Harold had arthritis in his knees. There is no dispute that Harold had serious respiratory problems which substantially limited his pulmonary capacity. Dr. Daneshvari and Dr. Chinn conducted tests independent of each other and both concluded that Harold's pulmonary capacity was approximately 50 percent of normal. Dr. Shah also noted this development, attributing it to black lung and hypertensive cardiovascular disease, exacerbated by Harold's smoking and obesity.[2] While each of these ailments, when viewed in isolation, may not, arguably, have prevented Harold from engaging in sedentary work activity, their cumulative impact certainly had such an effect.
 
 
 17
 Moreover, it was improper for the ALJ to discount Harold's assertions of pain because of his demeanor at the hearing. It is permissible for the ALJ and the Secretary to conclude that a witness' testimony is not credible, even if it is uncontradicted in the record. Beavers v. Secretary of Health and Human Services, 577 F.2d 383, 386 (6th Cir.1978). However, if there is uncontroverted evidence in the record which clearly corroborates a claimant's assertions of pain, it would be wrong for the ALJ to reject this testimony simply because of the claimant's demeanor. King v. Heckler, 742 F.2d 968, 974-75 (6th Cir.1984). In the instant case, there was ample and uncontroverted medical testimony from Harold's own treating physician, Dr. DelVecchio, that Harold was suffering major back pain. In light of this uncontradicted and overwhelming medical and lay evidence of Harold's severe back pain, we decline to give substantial deference to the ALJ's unexplained credibility finding.
 
 
 18
 We conclude that the Secretary's finding that Harold was capable of sedentary work is unsupported by substantial evidence and is clearly erroneous. The judgment of the district court is reversed and the case is remanded to the district court with instructions to remand to the Secretary for an award of benefits.
 
 
 19
 WELLFORD, Circuit Judge, dissenting.
 
 
 20
 The majority's opinion ignores the statute's express wording that this court must affirm the findings of the Secretary as to any fact that is supported by substantial evidence. 42 U.S.C. Sec. 405(g) (1976). Since there is considerable support in the record for the Secretary's determination of no disability, I must respectfully dissent.
 
 
 21
 Plaintiff in this action filed his first application for disability benefits on November 7, 1977. After a hearing, an Administrative Law Judge (ALJ) denied plaintiff's claim. The Appeals Council refused plaintiff's request for review, which a federal district court affirmed on August 14, 1980, and from which there was no appeal. On June 9, 1980, plaintiff filed a second application for disability insurance and for Supplemental Security Income. The Secretary denied these applications initially and on reconsideration, and subsequent to these denials, plaintiff had a hearing before an ALJ, who also denied his claim. The Appeals Council's ratification after plaintiff's request for review was affirmed by the district court. In his appeal, plaintiff claimed that the ALJ abused his discretion by basing his decision upon an "over-reliance" on observations made during the hearing, rather than on evidence produced at the hearing. Apart from any credibility determination, however, there was more than sufficient evidence in the record to affirm the Secretary's denial of benefits.
 
 
 22
 "[T]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g) (1976); see also Houston v. Secretary of Health and Human Services, 736 F.2d 365, 366 (6th Cir.1984) ("When supported by substantial evidence, the findings of fact of the Secretary are conclusive, and a decision denying benefits cannot be overturned."); Haynes v. Secretary of Health and Human Services, 734 F.2d 284 (6th Cir.1984). The Supreme Court has stated that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); see also Houston v. Secretary of Health and Human Services, 736 F.2d 365, 366 (6th Cir.1984); Kirk v. Secretary of Health and Human Services, 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). This court must review the record in its entirety to determine if the Secretary's finding of no disability is supported by substantial evidence. 736 F.2d at 366; Allen v. Califano, 613 F.2d 139 (6th Cir.1980).
 
 
 23
 The majority rests its decision to reverse the Secretary's determination on the judgment of plaintiff's treating physician, Dr. DelVecchio, that plaintiff was 100% disabled, and other medical proof indicating limitation of motion and pain due to a continuing back problem, restricted lung capacity, and evidence of an arthritic knee condition.[1] A review of the entire record, however, shows a considerable amount of medical evidence that conflicts with his treating physician's opinion.
 
 
 24
 The opinion of a treating physician is entitled to greater weight than that of a doctor who has seen the claimant only once. Stamper v. Harris, 650 F.2d 108, 111 (6th Cir.1981); Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978). The treating physician's opinion, however, is not binding on the Secretary, especially when other evidence brings into question its basis and reliability. See 20 C.F.R. Sec. 404.1527; see also Mongeur v. Heckler, 722 F.2d 1033 (2d Cir.1983); Giddings v. Richardson, 480 F.2d 652, 656 (6th Cir.1973); accord Laffoon v. Califano, 558 F.2d 253, 255-56 (5th Cir.1977).
 
 
 25
 Although Dr. DelVecchio opined that plaintiff was 100% disabled, his diagnosis was inconsistent and conflicting. On June 7, 1977, during a post-hernia operation examination, DelVecchio noted that plaintiff had "minimal arthritis ... in both knees." He further noted that "physical therapy ... helped his back considerably ... and [he] was sent home without any medication." At that time, DelVecchio recommended that plaintiff go on a diet and "get some exercise, either bicycle [sic] or jogging." On June 27, 1977, DelVecchio noted that patient came in for an examination with his back in "a thirty degree flexion position." Yet in a letter to the Bureau of Disability Determination DelVecchio noted that plaintiff "came in all bent over at a 60 degree angle with severe lower back pain requiring physical therapy." He further stated that plaintiff "had a markedly straightened lumbar spine," even though x-rays made by and analyzed by Dr. Stupar at DelVecchio's request had shown "slight straightening of the curve." DelVecchio further stated in this letter that "[t]here was some traumatic osteoarthritis in both knees and anterior lipping of vertebrae in the lumbar area," despite the fact that Dr. Stupar's x-rays showed "very minimal anterior lippings of the lumbar vertebrae," and Dr. Butler's objective tests, again made at DelVecchio's request, indicated that "both knees show little if any degenerative arthritis ... [j]oints are well maintained."[2] The record indicates that DelVecchio performed no additional objective tests and presumably, therefore, relied on Dr. Butler's and Dr. Stupar's findings in reaching his conclusions. DelVecchio's credibility is not strengthened by his letter written some time after March 5, 1979, which lists various observations "based on findings of 3-13-78." These "observations" are verbatim those contained in his November 21, 1977 letter. The record, further, is replete with medical testimony of various doctors that contradicts DelVecchio's conclusion of 100% disability.
 
 
 26
 On December 19, 1977, Dr. Mills noted that plaintiff could do "[b]asically sedentary work." Dr. Daneshvari, a few days later, opined that plaintiff "may be able to engage in a job requiring only mild exertion with no exposure to air pollution." On March 30, 1978, Dr. Larrick observed "the objective demonstration of disability is minimal to low.... [plaintiff] is not totally disabled and his partial disability is in my opinion operating in the area of 15% to 20%." On July 31, 1980, Dr. Shah claimed that plaintiff "has the residual functional capacity to do his usual past work as he performed it.... [d]isability is not established."
 
 
 27
 The record also indicates that plaintiff's problems, in large measure, were due to his refusal to follow medical advice for improving his condition. Plaintiff, for example, was extremely obese, yet he failed to lose weight as directed by nearly every doctor that saw him. In May 1977, Dr. DelVecchio instructed plaintiff to go on a 1000 calorie diet. In February 1978, Dr. Patel noted his failure at attempts to make plaintiff lose weight. In March 1978, Dr. Larrick noted he was 5'8" in height yet weighed 235 pounds. He recommended drastic weight loss and a graduated exercise program. In May 1980, Dr. Chinn noted plaintiff was very obese, but failed to lose weight. And in July 1980, Dr. Kinnerry noted that plaintiff weighed 290 pounds. Further, although plaintiff showed some lung impairment, and in fact was receiving black lung benefits, a number of doctors attributed his pulmonary problems to his smoking habit. There is evidence that he had smoked one to two packs a day for twenty-five years. Finally, in August 1980, Dr. Shah noted plaintiff's failure to take his blood pressure and diuretic medication for the previous six to eight months.[3]
 
 
 28
 In addition to the copious medical evidence supporting the Secretary's decision, the ALJ's own observations support a finding of no disability. Certainly an ALJ should not substitute his own observations for professional medical opinion of record. See, e.g., Lewis v. Califano, 616 F.2d 73, 76-77 (3d Cir.1980). Nor should he use an arbitrary "sit and squirm" index, which might place an undue emphasis upon claimant's ability to communicate the severity of his condition through non-verbal means. See Aubeuf v. Schweiker, 649 F.2d 107, 113 (2d Cir.1981).
 
 
 29
 The ALJ, however, should not ignore his own observations concerning the demeanor and actions of a disability claimant. "Since credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor 'is invaluable, and should not be discarded lightly.' " Kirk v. Secretary, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983), quoting Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir.1978); see also Houston v. Secretary, 736 F.2d 365, 367 (6th Cir.1984). This is especially true in situations when conflicting medical evidence exists concerning the severity of the claim of pain by Harris. See Gist v. Secretary, 736 F.2d 352, 358 (6th Cir.1984).
 
 
 30
 Here there were indications of record that plaintiff attempted to make his problems appear worse by making poor efforts during his physicians' examinations. In February 1978, Dr. Krumholz recommended repeat lung tests because "the patient effort is quite poor." And in April 1980, Dr. Chinn complained of plaintiff's "[p]oor effort--testing interrupted constantly by coughing."
 
 
 31
 The evidence in this case clearly is substantial to support the Secretary; we are not to conduct a de novo review of the evidence. See Schlabach v. Secretary, 469 F.Supp. 304 (N.D.Ind.1978). It is not the role of this court to reweigh the evidence nor substitute its judgment for that of the Secretary; rather this court's sole duty is to determine if substantial evidence in the record supports the Secretary's decision. Rodriguez v. Schweiker, 640 F.2d 682 (5th Cir.1981).
 
 
 32
 Plaintiff, moreover, had applied for disability benefits less than three years prior to the present application in controversy. Just as this Court requires the Secretary to prove a substantial improvement in condition prior to terminating benefits, Haynes v. Secretary, 734 F.2d 284, 288 (6th Cir.1984), I would require a claimant to show a substantial worsening of his condition before allowing benefits to a claimant who previously had unsuccessfully applied for benefits, and a final decision rendered which indicated no disability under the Act.
 
 
 33
 "After a final determination of disability," one court cogently noted, "if a termination of benefits were effected without a showing either of improvement or newly discovered evidence, such a termination would of necessity be based on whim or caprice or would constitute an impermissible relitigation of facts and determinations already finally decided." Shaw v. Schweiker, 536 F.Supp. 79, 83 (E.D.Pa.1982), cited approvingly by Simpson v. Schweiker, 691 F.2d 966, 969 n. 2 (11th Cir.1982). This argument is appealing in situations, such as the instant case, in which benefits have been recently denied and a reapplication has been made. In fact, since the burden rests with the claimant to prove the existence of disability, see Crosby v. Schweiker, 650 F.2d 777, 778 (5th Cir.1981), he should have the additional burden of proving a deterioration or worsening of his condition. No such proof was adduced here.
 
 
 34
 The majority's decision here is a precedent to encourage Social Security claimants, once finally rejected after full hearing, to file additional claims in hope of achieving a different result from another tribunal. For all these reasons, I would affirm the decision reached in this case by the Secretary and the court below.
 
 
 
 *
 The Honorable George Edwards took senior status January 15, 1985
 
 
 [1]
 The dissent points to certain alleged contradictions between Dr. DelVecchio's testimony and that of other physicians, as well as supposed inconsistencies in DelVecchio's own statements. We find no such contradictions or inconsistencies. It is not surprising that different physicians could come to slightly different conclusions about a patient's condition based on their separate tests. Physicians use different kinds of equipment and techniques and a patient's condition may vary somewhat from day to day. In the instant case, the similarities of the physician's conclusions are more striking than their differences. For example, there is no disagreement that Harold's respiratory difficulties had reduced his pulmonary capacity by approximately 50 percent, that he had pneumoconiosis, that he had cardiovascular disease, and that he had difficulty bending his back. The dissent notes that Dr. DelVecchio stated that Harold had a "markedly straightened" lumbar spine, while another physician characterized it as a "slight straightening on the curve". This is not necessarily an inconsistency. If even a slightly straightened spine causes pain, then it would not be inconsistent for another physician to characterize it as markedly straightened. "Markedly" would, in that instance, refer to the pain which results not the actual degree of straightening
 
 
 [2]
 The dissent asserts that Harold disregarded various physicians' orders that he lose weight and stop smoking and that, as a result, Harold exacerbated his health problems. This court has previously held that "an impairment that can be remedied by treatment will not serve as a basis for a finding of disability." Henry v. Gardner, 381 F.2d 191, 195 (6th Cir.1967). In the instant case, the record is devoid of any evidence that Harold would have regained his residual capacity for work if he had lost weight and stopped smoking. Certainly, he would have received some benefit from these changes but given his other major health problems, such as his black lung disease and arthritis, it cannot be said that his condition would have sufficiently improved so that he could have engaged in gainful employment. See 20 C.F.R. Sec. 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." [emphasis added]; Fraley v. Secretary of Health and Human Services, 733 F.2d 437, 440 (6th Cir.1984)
 Further, the dissent is incorrect in characterizing the physicians' recommendations as a prescribed course of treatment. Rather, they should more properly be viewed as a suggested course of treatment since there is no evidence that Harold was ever ordered by any of his physicians to stop smoking and to lose weight. We therefore reject the dissent's implication that Harold's failure to change these habits constituted a willful failure to follow prescribed treatment. See Fraley, supra; Perkins v. Railroad Retirement Board, 725 F.2d 46 (6th Cir.1984); Young v. Califano, 633 F.2d 469, 472-73 (6th Cir.1980). As Judge Peck wisely noted in Stone v. Harris, 657 F.2d 210, 212 (8th Cir.1981):
 The agency is certainly not entitled to presumptions that obesity is remediable or that an individual's failure to lose weight is "wilful". The notion that all fat people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte. Modern studies debunk this myth [citation omitted].
 
 
 [1]
 Strangely, the majority characterizes as "audacious" the Secretary's finding of no disability "in view of the allowance of Black Lung and Workers' Compensation benefits to [claimant] by those other responsible agencies." The Secretary, however, correctly applied the law. As stated in 20 C.F.R. Sec. 404.1504:
 A decision by any non-governmental agency or any other governmental agency about whether you are disabled ... is based on its rules and is not our decision about whether you are disabled.... We must make a disability ... determination based on social security law. Therefore, a determination made by another agency that you are disabled ... is not binding on us.
 Given the different goals addressed by the Black Lung and Workers' Compensation programs from those of the social security disability program, it is quite reasonable and not "audacious" for the Secretary to deny disability benefits even if other agencies are willing under their own rules to grant benefits. Therefore, it is irrelevant that claimant received Black Lung and Workers' Compensation benefits, even though the majority viewed this as highly relevant.
 
 
 [2]
 The majority misconstrues the record when it claims "It is not surprising that different physicians could come to slightly [sic!] different conclusions about a patient's condition based on their separate tests." Merely because DelVecchio opined that claimant had a "markedly straightened" spine and had "traumatic osteoarthritis," would not be troubling if, as the majority erroneously assumes, DelVecchio performed separate tests. DelVecchio, as is absolutely clear in the record, however, referred claimant to Dr. Stupar and Dr. Butler to perform objective tests, which DelVecchio either was unable or unequipped to perform. Thus DelVecchio characterized claimant as having a "markedly straightened spine" based upon Dr. Stupar's objective finding that claimant had "slight straightening of the curve." DelVecchio, likewise, characterized claimant as having "traumatic osteoarthritis" based upon Dr. Butler's objective finding that "both [of claimant's] knees show little if any degenerative arthritis ... joints are well maintained."
 The words "marked" and "slight" are not synonymous. See supra Majority opinion at note 1. "Marked" is defined as "having a distinctive or strongly pronounced character: Noticeable," Webster's Third International Dictionary 1383, definition 2 (1981); "slight" is defined as "deficient in weight, solidity, gravity, importance, or other esteemed quality: Trivial, Paltry, Superficial." Id. at 2142, definition 2c.
 The doctors refer to the physical appearance of the spine without making reference to the pain resulting from the condition. Thus, the majority's attempt to reconcile the two doctors' statements is unavailing.
 
 
 [3]
 The majority claims that the dissent "is incorrect in characterizing the physicians' recommendations as a prescribed course of treatment," and claims "they should more properly be viewed as a suggested course of treatment since there is no evidence that [claimant] was ever ordered ... to stop smoking and to lose weight." It is more reasonable to view a doctor's statement "if you do 'X' you will not get well" as a prescribing a course of treatment" not to do "X." Distinguishing a "suggested course of treatment" from a "prescribed course of treatment" extols form over substance in this instance
 Unlike the situation in Young v. Califano, 633 F.2d 469 (6th Cir.1980), cited by the majority, claimant here was offered no "alternative procedures" which would help his condition. The other cases cited by the majority are equally inapposite.