Sue A. ROUSH, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 1:02–CV–00399.

United States District Court, S.D. Ohio, Western Division.

March 30, 2004.

Robert Gregory Park, Cincinnati, OH, for Sue A. Roush, Plaintiff.

Randall Eugene Yontz, United States Attorney's Office, Randall Eugene Yontz, United States Attorney's Office, Columbus, OH, John Jay Lee, Social Security Administration, Chicago, IL, for Commissioner of Social Security, Defendant.

## ORDER

SPIEGEL, Senior District Judge.

Alleging disability since August 31, 1999, Plaintiff Sue A. Roush ("Roush") filed for disability insurance and Supplemental Security Income ("SSI") benefits on November 19, 1999. Her applications were repeatedly denied; upon her request, she was heard, *pro se,* by an Administrative Law Judge ("ALJ") on November 7, 2000. On August 1, 2001, she appeared before a second ALJ, accompanied by counsel. On September 13, 2001, the latter ALJ affirmed denial of Roush's applications, concluding that she was not disabled under the Social Security Act, 42 U.S.C. § 301 *et seq.* Her appeal to the Appeals Council was denied, and she filed the instant suit

on June 5, 2002 (doc. 1), seeking judicial review of the ALJ's determination pursuant to 42 U.S.C. § 405(g). On July 22, 2002, following briefing and oral argument, the assigned Magistrate Judge issued a Report and Recommendation (doc. 17) recommending that the ALJ's determination be reversed pursuant to Sentence Four of 42 U.S.C. § 405(g) and remanded for an award of benefits. Defendant filed objections to the Magistrate Judge's Report and Recommendation on September 5, 2003 (doc. 19), and Roush responded on September 18, 2003 (doc. 20). The matter is therefore fully briefed and ripe for decision. For the following reasons, the Defendant's objections will be overruled, and the Magistrate Judge's Report and Recommendation will be adopted in its entirety.

## I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL POSTURE

There is little, if any, disagreement about the factual record (or lack thereof) before the Court; the dispute lies primarily in the conclusions to be drawn therefrom. Roush claims to suffer from renal dysfunction and interstitial cystitis. She avers that this condition forces her to urinate as frequently as every twenty minutes, rendering her unable to perform a wide range of jobs and disabled as contemplated by the Social Security Act. In support, she offers the testimony of her treating physician, urologist Dr. Lawley. Dr. Lawley has treated Roush since 1993 for renal dysfunction and interstitial cystitis, including performing several surgeries on her, conducting many examinations and diagnostic tests, diagnosing her conditions, and prescribing appropriate pharmaceutical and physical regimens to treat them. Although his clinical notes do not reveal a specific determination of or reference to the precise time interval between her urinations, they contain numerous references as to her reported need to urinate frequently, and he further indicates that this would be consistent with her condition. In a post-hearing questionnaire however, he did conclude that Roush needed to urinate every twenty minutes and that this was consistent with her condition.

In response, the Defendant proffered the testimony of a number of experts, including one Dr. Neville, who concluded that Roush's kidney impairment was insufficiently severe to render her disabled. Significantly, however, these experts apparently limited their assessment to her kidney impairment; they failed to address her interstitial cystitis and the conditions resulting therefrom, including her frequent need to urinate.

Although the ALJ determined that Roush suffered from a number of severe impairments, including interstitial cystitis, he nonetheless concluded that she was not disabled as contemplated by the Act. His determination was rooted in two conclusions drawn from the evidence and his application of the relevant law. First, he explicitly rejected Dr. Lawley's medical opinion as to the severity of her condition and, in particular, the relative frequency of her urination.[1] He concluded that Lawley's treatment notes made failed to record explicitly Roush's purported need to urinate every twenty minutes, finding instead

---

1. At the administrative hearing, Roush testified that she needed to urinate every twenty minutes, and the vocational expert offered testimony that a need to urinate every half hour would substantially eliminate many potential jobs from her purview. Defendant essentially claims that Dr. Lawley's exposure to this testimony before completing the written questionnaire in which he claimed that Roush needed to urinate every twenty minutes taints his testimony as to this fact (doc. 19).

that they "simply repeat the claimant's subjective complaints" (doc. 17). Accordingly, he seems to conclude that Dr. Lawley's testimony is of no import because he failed to actually witness or otherwise scientifically ascertain the frequency of Roush's urination, and he found that her testimony was credible only to the extent that it coincided with those of the Defendant's experts, based largely on his determination that it was inconsistent with her prior work history. Furthermore, it appears that the ALJ based his conclusion on his determination that, taken as a whole, the objective evidence presented in the matter failed to show any substantive decline in Roush's kidney function.

As a result, the ALJ concluded that Roush possesses the capacity to perform "a significant range of sedentary work;" the primary relevant limitation he did find, for purposes of this Court's review, is that she requires employment that permits her to take restroom breaks of five minutes every hour, rather than the twenty-minute timeframe Roush and her physician declared (*Id.*). Although he concluded that she was physically unable to perform her previous employment, he found—on the basis that she only required hourly breaks—that she could perform a significant number of other jobs existing in the national economy. Accordingly, he concluded that she was not disabled under the Act and, therefore, that she was not entitled to receive either DIB or SSI.

## II. LAW AND DISCUSSION

Upon *de novo* review, the Court finds the Magistrate Judge's Report and Recommendation proper. It contains a thoughtful and accurate survey of the stat-

utory framework and interpretive caselaw applicable to the instant case. In her objections, the Defendant avers that the ALJ properly discounted the treating physician's specific hearing testimony as to the necessary frequency of Roush's urination because, despite repeatedly noting in his records over many years that the Plaintiff needed to urinate frequently, he failed to articulate a specific interval. Fundamentally, however, Dr. Lawley's treatment notes and statements in evidence before the ALJ are in no way inconsistent; the latter—offered in response to a specific question by counsel at the request of the deciding ALJ—is simply more precise.[2] Contrary to the ALJ's finding and the Defendant's protestations, there is absolutely no inconsistency or circumstances that render his testimony suspect. Accordingly, there is no reason for this Court to reject Dr. Lawley's statements in support of Plaintiff's claim of disability or to otherwise depart from the "Treating Physician Rule" that affords his assessment deference. *See* 20 C.F.R. §§ 404.152, 404.1527(d), 416.927(d); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530–31 (6th Cir.1997); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).

Furthermore, and significantly, the only substantive evidence that the Defendant and the ALJ offer in opposition is the testimony of a physician who neither treated the Plaintiff nor, it appears from the record, analyzed all aspects of the Plaintiff's condition. He averred, as the ALJ concluded, that the Plaintiff's kidney functioning was insufficient to cause the conditions of which she complained; however, Dr. Lawley based his assessment on the result of the Plaintiff's interstitial cystitis,

---

**2.** The Court notes, as does the Plaintiff, that the ALJ never contended that Dr. Lawley's testimony was suspect merely because it occurred after the conclusion of the hearing.

Indeed, Plaintiff's counsel posed the question as to the "reasonable frequency" of Roush's "rest-room breaks" at the ALJ's request (doc. 20).

a ground simply left unaddressed by the ALJ or the Defendant's proffered arguments. The two remaining contentions of the ALJ in support of his finding—that the Plaintiff needed to take only one restroom break during the hour-long administrative hearing and that there is no evidence that the symptoms of her conditions have worsened in the last few years—merit little response. The Court finds such observations, even considered together, patently insufficient to sustain denial of her benefits.

In the event that the Court agreed with the Magistrate Judge in finding the ALJ's decision improper, the Defendant urges the Court to remand the case to the ALJ for further proceedings "for consideration of the evidence this Court feels was overlooked and [for further] articulation of his analysis" (doc. 19). The Court finds such treatment unwarranted. Based on the nature of the factual dispute between the parties, the Court finds it unlikely that a remand would serve to produce any additional significant evidence in support of the Defendant's position. Furthermore, as the Court has concluded that the evidence produced clearly warrants an award of benefits, the ALJ's elucidation of his analysis is simply unnecessary.

## III. CONCLUSION

For the foregoing reasons, the Defendant's Objections (doc. 19) are OVERRULED. The Magistrate Judge's Report and Recommendation (doc. 17) is hereby ADOPTED IN ITS ENTIRETY. Pursuant to Sentence Four of 42 U.S.C. § 405(g), the decision of the Administrative Law Judge is REVERSED. The matter is hereby REMANDED, and the Administrative Law Judge is ORDERED to award Plaintiff disability insurance and Supplemental Security Income benefits in accordance with her application.

SO ORDERED.

## REPORT AND RECOMMENDATION

HOGAN, Senior District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court for a decision after a telephonic hearing with counsel. We have carefully considered all pleadings filed in this case as well as the oral arguments of the parties.

## BACKGROUND

Plaintiff, Sue A. Roush, filed an application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on November 19, 1999, alleging disability since August 31, 1999 due to renal dysfunction and interstitial cystitis. (Tr. 123–25, 576–78, 133). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an administrative law judge (ALJ). On November 7, 2000, Plaintiff appeared pro se and testified at an ALJ hearing. On August 1, 2001, Plaintiff appeared with counsel and testified at a second hearing before a different ALJ. A Vocational Expert (VE) also appeared and testified at the second ALJ hearing.

Plaintiff was born on June 27, 1966, and was 35 years old at the time of the ALJ's decision. Plaintiff has a high school education with one year of college credits and past work experience as a cook, manager, and coil winder. (Tr. 123, 95, 139).

On September 13, 2001, the ALJ issued a decision denying Plaintiff's DIB and SSI applications. The ALJ determined that Plaintiff suffers from the following severe impairments: interstitial cystitis and Anxiety Disorder, NOS. (Tr. 26). The ALJ determined that Plaintiff has a history of right hydronephrosis, but not since the alleged onset date. (Tr. 26). The ALJ found Plaintiff's impairments do not alone or in combination meet or equal the level of severity described in the Listings. According to the ALJ, Plaintiff retains the residual functional capacity (RFC) to perform "a significant range of sedentary work." (Tr. 27). The ALJ found that Plaintiff could lift/carry and push/pull ten pounds occasionally; stand and/or walk a total of four hours, two hours at a time, in an eight-hour day; sit a total of six hours, three hours at a time, in an eight-hour day; occasionally stoop, kneel, crouch and climb ramps/stairs; and never crawl or climb ladders, ropes or scaffolds. Moreover, any job must accommodate restroom breaks of five minutes each approximately every hour and claimant is unable to remember and carry out detailed instructions. (Tr. 26). The ALJ determined that Plaintiff's testimony was credible only to the extent consistent with this above RFC. (Tr.26). The ALJ determined that Plaintiff could not perform her past relevant work, but could perform a significant number of other jobs in the national economy, such as bench assembly, factory labor, and general clerical work. (Tr. 27). Consequently, the ALJ concluded that Plaintiff is not disabled under the Act, and therefore not entitled to DIB or SSI. Plaintiff's appeal to the Appeals Council was denied and this appeal followed. (Tr. 7–8).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's de-termination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir.1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(I), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that

can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048 (6th Cir.1983); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir.1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir.1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir.1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir.1978). *See also Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir.1987).

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530–31 (6th Cir.1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir.1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on wheth-

er it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir.1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters v. Commissioner*, 127 F.3d 525, 529 (6th Cir.1997); *Shelman*, 821 F.2d at 321.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991).

■■■ Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043, 1990 WL 94 (6th Cir.1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir.1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

■■■ Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir.1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir.1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir.1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs and at oral argument and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff alleges that the ALJ's residual functional capacity (RFC) assessment was

not based upon substantial evidence and that the ALJ erred by failing to afford her treating physician's opinion the appropriate weight. For the reasons which follow, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to accord the proper deference to the opinion of Plaintiff's treating physician, Dr. Lawley and failed to articulate any basis for his RFC finding regarding Plaintiff's urinary frequency.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530–31 (6th Cir.1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir.1983) (same). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). Even where the ALJ determines not to give the opinions of a treating physician "controlling" weight, Social Security regulations and rules nonetheless require the ALJ to determine and articulate the amount of weight given to the opinions. Section 404.1527(d). Social Security Ruling 96–2p provides in relevant part:

Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record *means only* that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.* Treating source medical opin-

ions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p (emphasis added).

 In the instant case, the ALJ declined to give "controlling" weight to the opinion of Dr. Lawley, stating that it was not supported by objective evidence. (Tr. 25). The ALJ specifically stated:

> This assessment is not supported by the objective evidence (which shows no decline in right kidney function and no obstruction despite the presence of a tiny calculus in the upper pole) nor by his office notes or those of Dr. Neville as to her level of pain and the frequency of urination. Most of Dr. Lawley's office notes simply repeat the claimant's subjective complaints.... Accordingly, Dr. Lawley's evaluation is given little weight.

(Tr. 25).

In making this determination, the ALJ failed to adhere to the directive set forth above that even where the treating physician's opinion is not entitled to "controlling" weight, the opinion should not be rejected, but is "entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." SSR 96–2p. In this respect, the ALJ failed to give appropriate consideration to the length and nature of the treating relationship of Dr. Lawley. Dr. Lawley, a urologist, has treated Plaintiff since 1993 for renal dysfunction and interstitial cystitis. The record shows that he performed several surgeries on this patient, ordered many diagnostic tests and has seen Plaintiff many times over the past years. (Tr. 218–47; 252–53; 255–56; 258; 263–74;

277–81; 292–302; 332–33; 361; 367–71; 375–76; 381–84; 385–86; 390–99; 401–424; 429–33; 438; 524–26; 532–36; 542; 544–60; 566–69; 571–73; 574). This wealth of information places Dr. Lawley in a unique position to assess Plaintiff's functional capacity from the standpoint of her bladder condition. In addition, the state agency physicians offered conclusions related to Plaintiff's kidney impairment only, stating that no severe kidney impairment existed. (Tr. 359, 360). These opinions completely failed to address Plaintiff's interstitial cystitis as a condition separate from her kidney impairment.

Moreover, the ALJ ignored the significance of Dr. Lawley's specialty as an urologist in assessing the effect of Plaintiff's bladder condition on her need to urinate every twenty minutes, stating that the assessment was not supported by the objective evidence. *See* 20 C.F.R. § 404.1527(d)(5). Defendant argues that the ALJ did not improperly assume a connection between Plaintiff's renal disorder and bladder impairment and did not rely solely on evidence of Plaintiff's kidney function in discounting Dr. Lawley's opinion. Defendant contends that, in addition to the evidence of Plaintiff's kidney function, the ALJ found that Dr. Lawley's assessment was not well-supported. We disagree. In addressing Dr. Lawley's restrictions, the ALJ specifically stated that Dr. Lawley's assessment was not "supported by the objective evidence (*which shows no decline in right kidney function and no obstruction despite the presence of a tiny calculus in the upper pole* ) ...." (Tr. 25)(emphasis added). This statement indicates to the Court that the ALJ considered Plaintiff's kidney function to be of great significance to his decision to reject Dr. Lawley's opinion. Indeed, the ALJ made no reference to Plaintiff's bladder impairment when he found that Dr. Law-

ley's opinion was not supported by objective evidence. Defendant goes on to argue that there is no evidence that Dr. Lawley personally observed such urinary frequency. The absurdity of this statement is not lost on the Court. However, Defendant's argument identifies precisely the issue in this case, namely whether Plaintiff must provide objective evidence of a symptom for which there is no objective evidence.

Social Security Ruling 02–2p expressly recognizes that interstitial cystitis is a diagnosis of exclusion because there is currently no definitive test to identify the disorder. *See* SSR 02–2p, TITLES II AND XVI: EVALUATION OF INTERSTITIAL CYSTITIS (November 5, 2002). While the Defendant correctly argues that the Ruling is not binding authority with respect to Plaintiff's action, since it is not retroactive in its applicability. However, the Ruling constitutes persuasive authority from which the Court can derive the current trend in the Administration's evaluation of disability claims based on interstitial cystitis. Defendant does not dispute that Plaintiff suffers from interstitial cystitis. Thus, Defendant is not disputing that the appropriate "symptoms, signs, and laboratory findings" are present from which a diagnosis of interstitial cystitis can be made. Included among these diagnostic tools is the "judgment of a physician who has made the diagnosis after a review of the claimant's medical history, a physical examination of the claimant, and any pertinent testing to establish the existence of IC." SSR 02–2p. Defendant does not dispute the existence of interstitial cystitis nor even Plaintiff's need to urinate frequently. Rather, Defendant disputes Plaintiff's testimony and that of Dr. Lawley with respect to the actual measure of the frequency. Defendant contends that there is no objective evidence supporting Plaintiff's claim that she must urinate every twenty minutes. We find

that there is no objective evidence that she does not need to urinate every twenty minutes. According SSR 02–2p, " [t]he functions likely to be limited [by interstitial cystitis] depend on many factors, including urinary frequency and pain .... The presence of urinary frequency alone can necessitate trips to the bathroom as often as every ten to fifteen minutes, day and night." We find this to be persuasive evidence that Plaintiff's claimed urinary frequency of every twenty minutes is not unreasonable, per se.

More importantly, there is no objective evidence which supports the ALJ's finding that Plaintiff's need to urinate be limited to every hour. SSR 96–2p clearly states that the opinion of a treating physician must be given *controlling weight* when it is "well-supported and *not inconsistent* with the other substantial evidence" in the record. We have already stated above that Dr. Lawley's diagnosis of interstitial cystitis is well supported. That Dr. Lawley's opinion with respect to the frequency of urination is also well supported is clear to this Court. Dr. Lawley's office notes from 1997 document Plaintiff's "very significantly elevated urgency and frequency of urination" and to frequency and other symptoms which made it difficult for Plaintiff to remain employed in 2000. (Tr. 511, 548). Plaintiff complained of frequency in her office visits, the most recent complaint having been made on 5/18/00. (Tr. 551). While the specific numbers of restroom breaks is not noted in Dr. Lawley's treatment notes, he did complete a Questionnaire, at the request of the ALJ, estimating Plaintiff's frequency of urination at every twenty minutes. (Tr. 572). Defendant now seeks to discredit this assessment because it was completed after Plaintiff's hearing, at which she testified to a frequency of twenty minutes, implying that Dr. Lawley's opinion was somehow im-

properly influenced by Plaintiff's testimony. We find this basis for rejecting Dr. Lawley's opinion to be unsupported and in error.

The ALJ should have deferred to Dr. Lawley's opinion given Dr. Lawley's specialty in urology and his treatment of Plaintiff's bladder impairment over a period of time. Dr. Lawley rendered his opinion after performing several surgeries on this patient, ordering many diagnostic tests and seeing Plaintiff many times over an eight year period. Given Dr. Lawley's specialty as an urologist, his position as Plaintiff's treating physician, and his clinical findings pre- and post-surgery, he is in a unique position to assess Plaintiff's bladder condition and the limitations imposed by it. Given the nature of the relationship between Dr. Lawley and Plaintiff, his specialty in urology, his clinical findings pre- and postsurgery, and the lack of contradiction in the record, the ALJ erred by failing to accord proper deference to his opinion. The ALJ's failure to accord any weight to Dr. Lawley's opinion is without substantial support in the record. The ALJ's failure to articulate a reasoned basis for his rejection of Dr. Lawley's opinion constitutes reversible error. *Shelman*, 821 F.2d at 321.

Moreover, considering the weight and deference which is to be given to the treating physician's report, as well as the lack of objective evidence contradicting such, there is no substantial evidence supporting the ALJ's RFC finding with respect to the frequency of urination issue. Plaintiff testified, and her treating physician confirmed, her need to urinate every twenty minutes. Dr. Lawley's office notes reflect Plaintiff's many complaints of frequency. More importantly, there is no other medical evidence in the record contradicting such frequency. Accordingly, the ALJ's RFC finding is not supported by substantial evidence.

Plaintiff also argues that the ALJ's credibility finding is not supported by substantial evidence. Plaintiff testified that she needs to urinate every twenty minutes due to her bladder condition. Her testimony is supported by Dr. Lawley's assessment as discussed above. To the extent the ALJ failed to consider Dr. Lawley's opinion regarding urinary frequency and articulate any legitimate reason for rejecting such limitation, the ALJ's credibility finding on this same issue is not supported by substantial evidence.

Likewise to the extent the ALJ failed to consider Dr. Lawley's limitation regarding urinary frequency in his hypothetical to the vocational expert, the reliance by the ALJ on vocational testimony to find Plaintiff not disabled is not supported by substantial evidence.

Lastly, the vocational testimony in the record clearly establishes that, in light of Plaintiff's need for restroom breaks every twenty minutes, there are no jobs at the sedentary level which she is capable of performing. (Tr. 96–97). Because the record adequately establishes Plaintiff's entitlement to benefits and there is no significant evidence to the contrary, this matter should be remanded for an award of benefits. *See Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir.1994); *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.1994); *Faucher v. Secretary of HHS*, 17 F.3d 171, 176 (6th Cir.1994).

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and remanded for an award of benefits.

July 21, 2003